THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, *et al.*, Plaintiffs-Appellees, v. ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees (Rose Edelson   *et al.*, Indiv. and as Representatives of a Class of Persons Similarly Situated, Petitioners and Intervenors-Appellants).—ROSE EDELSON *et al.*, Indiv. and as Representatives of a Class of Persons Similarly Situated, Plaintiffs-Appellants, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (4th Division)   Nos. 1—89—3477, 1—90—0198 cons.

Opinion filed March 11, 1993.

Aaron S. Wolff, Arnold M. Flamm, of Orlikoff & Flamm, and Arthur T. Susman and Jeffery H. Fradkin, both of Susman, Saunders & Buehler, all of Chicago, for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Kevin M. Forde and Mary Anne Mason, both of Kevin M. Forde, Ltd., and Howard J. Trienens and Michael I. Miller, both of Sidley & Austin, both of Chicago, for appellee Commonwealth Edison Company.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Rose Edelson and Sheldon Kamin (Edelson), sought leave to intervene in a pending rate case against Commonwealth Edison (Edison). Edelson also brought a class action suit which sought to compel Edison to institute tax refund procedures against the State and certain municipalities for utility and franchise taxes which were imposed and collected upon electricity charges subsequently found by the circuit court to be illegal. The trial court denied the petition for leave to intervene because Edelson had been adequately represented by consumer and governmental bodies in the rate case and because Edelson's motion for intervention was not timely. The trial court also dismissed Edelson's suit because Edelson failed to name the necessary taxing authorities as parties in the suit and, further, Edelson's claim was precluded by the judgment in the rate case.

We begin by summarizing the pertinent procedural background. In October 1985, Edison was granted a $495 million rate increase by the Illinois Commerce Commission (Commission). Twelve governmental bodies and public interest groups appealed the Commission's order to the circuit court of Cook County and their appeals were consolidated. In April 1986, the circuit court reversed the Commission's order and remanded the cause to the Commission for a new rate-making proceeding. On May 16, 1986, upon emergency motion by Edison, the circuit court stayed enforcement of its judgment pursuant to Supreme Court Rule 305(b). (134 Ill. 2d R. 305(b).) The stay order enabled Edison to continue to collect the $495 million annual rate increase throughout the appellate process. However, since the circuit court had held that the rate increase was illegal, the court predicated its stay order on various conditions. One condition imposed a requirement that Edison keep records which reflected the difference between rates collected after April 29, 1986 (the date of the circuit court's judgment reversing the rate order), and the rates which would have been collected without the costs which the court ruled should be excluded from Edison's final rate-base determination. The stay order also provided that if the circuit court's reversal of the rate increase were affirmed, Edison would pay refunds of the illegal portion of the rates it collected, and the circuit court would retain jurisdiction to enforce the order.

The provision of the stay order which is the subject of this appeal is paragraph 7, which reads as follows:

"Such refunds shall not include state and municipal utility and franchise taxes paid after April 29, 1986, by Edison on any amount ultimately refunded ***."

Throughout the appellate process, Edison acted in accordance with the May 16, 1986, stay order and collected the challenged rates which were subject to a refund and paid the taxes which were owed on those monies to the various bodies which impose taxes upon utility revenues. In the interim, all parties appealed the circuit court's April 1986 decision directly to the supreme court. No party, however, appealed the circuit court's May 1986 stay order.

In June 1987, the supreme court affirmed the circuit court's reversal of the Commission's rate order and remanded the cause to the Commission for further rate-making proceedings consistent with its decision. (*People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 510 N.E.2d 865 (*Hartigan I*).) In September 1989, the Commission issued a supplemental order which set forth, among other parameters, the amount of the refund. At this time, the circuit court retained jurisdiction over the refund process and the various terms necessary to implement and administer a refund as outlined in its May 1986 stay order. In October 1989, the circuit court issued a refund methodology order (RMO) based upon the 1986 stay order. The RMO reaffirmed paragraph 7 of the stay order and protected from recapture the utility and franchise tax revenues which were paid during the refund period.

In November 1989, Edelson sought leave to intervene in the rate-refund litigation for the limited purpose of clarifying and amending the RMO as to the tax consequences. The circuit court denied Edelson's petition to intervene in the rate case, reasoning that the consumer and governmental parties who appeared in the rate case had fully and adequately represented all of the interests of Edison consumers. The court also stated that Edelson's petition was not timely.

■ ■ Intervention may be permissive or as a matter of right. A party is allowed to intervene as of right when a statute confers the unconditional right to intervene, when a party who will be bound by an order or judgment in the action will not be adequately represented by existing parties, or when a party will be adversely affected by the disposition of property subject to the control of the court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—408(a).) Permissive intervention is subject to the court's discretion and may be allowed when a statute confers a conditional right to intervene or when an applicant's claim and the main action concern a common question of law or fact. (Ill. Rev. Stat.

1987, ch. 110, par. 2—408(b).) In the case of both permissive intervention and intervention as of right, the application to intervene must be made in a timely manner. (*Moran v. Commonwealth Edison Co.* (1979), 74 Ill. App. 3d 964, 393 N.E.2d 1269.) Absent a clear abuse of discretion, the trial court's judgment in these matters will not be reversed on appeal. *Waters v. City of Chicago* (1981), 95 Ill. App. 3d 919, 420 N.E.2d 599.

Certain factors are considered in determining the timeliness of a petition to intervene. The factors include when the intervenors became aware of the litigation, the amount of time that elapsed between the initiation of the action and the filing of the petition to intervene, as well as the reason for the party's failure to seek intervention at an earlier date. *Schwechter v. Schwechter* (1985), 138 Ill. App. 3d 602, 486 N.E.2d 340; *Moran v. Commonwealth Edison Co.* (1979), 74 Ill. App. 3d 964, 393 N.E.2d 1269.

Edelson's primary support for the timeliness of her petition is that she did not know that the May 1986 order would interfere with her right to a tax refund until October 1989 when the court entered its rate methodology order. In support of this, Edelson points to excerpts from the hearings to illustrate that the intent of paragraph 7 in the May 16, 1986, order was not clear to her until October 1989. Therefore, Edelson concludes that her petition was timely, as it was filed shortly after the October 1989 hearing.

We do not believe that Edelson's explanation for her failure to seek intervention at an earlier date has merit. We rely upon the plain language of paragraph 7 of the May 16, 1986, order. The order specifically states that if a refund were provided, that refund would not include State and municipal utility and franchise taxes which Edison paid after April 29, 1986. We do not agree that this language was confusing. Moreover, in light of the number of intervening consumer and governmental groups, we cannot say that Edelson was not adequately represented for purposes of clarifying whether paragraph 7 precluded Edison consumers from obtaining refunds on the taxes. As we have discussed, timeliness is a requirement for both permissive intervention and intervention as of right. We thus conclude that the court did not abuse its discretion in denying Edelson's petition to intervene in the rate case because the petition was not timely.

Edelson has also appealed the court's dismissal of her complaint. On October 11, 1989, Edelson filed a class action asking the court to require Edison to promptly file claims for a refund with each taxing authority to which Edison had paid taxes on the portion of the receipts from electricity charges found to be improper and excessive.

Edison moved to dismiss the complaint based upon Edelson's failure to name the necessary taxing bodies and also based upon *res judicata* because Edelson's claims constituted a collateral attack on the circuit court's order in the rate case. The court granted Edison's motions to dismiss the complaint.

Edelson contends that the court incorrectly concluded that *res judicata* applies to bar her lawsuit. Edelson argues that the judgment in the rate case is not a final judgment; the court in the rate case lacked the authority to resolve the tax issues; taxpayers were not represented in the rate case; the trial court did not adjudicate the tax claims which were raised in her complaint; and because Edelson was not given notice and the opportunity to be heard, barring her suit on the basis of *res judicata* violates her due process rights.

■ Under the doctrine of *res judicata,* a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies. (*Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 539 N.E.2d 1216; *People v. Kidd* (1947), 398 Ill. 405, 75 N.E.2d 851.) That judgment is an absolute bar to subsequent actions by the same parties or their privies which involve the same claims or demands decided in the original action as well as matters which could have been decided in that suit. (*La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 337 N.E.2d 19.) The essential elements of *res judicata* are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of the parties or their privies. *People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 294, 602 N.E.2d 820, 825.

As to the first requirement, Edelson argues that the trial court lacked jurisdiction to decide the tax refund issue and the judgment was not final because it was not rendered by a court of competent jurisdiction. We do not agree with Edelson's assertion. As discussed by our supreme court in *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1992), 148 Ill. 2d 348, 403, 592 N.E.2d 1066, 1091 (*Hartigan II*), the circuit court was authorized by Supreme Court Rule 305(b) to grant its May 1986 stay order and to condition that order upon "such terms as are just." (134 Ill. 2d R. 305(b)(3).) Noting that all of the parties benefited from the refund-related conditions of the stay order, the court concluded that the circuit court's retention of jurisdiction over the terms and implementation of the refund was just and equitable. (*Hartigan,* 148 Ill. 2d at 404, 592 N.E.2d at 1092.) The court also reviewed portions of the order and noted that the terms of the order would be affirmed unless the circuit court abused its discretion.

(*Hartigan*, 148 Ill. 2d at 405, 592 N.E.2d at 1092.) In light of *Hartigan II*, we find that the court did have jurisdiction to set forth the terms of the stay order and the judgment of the circuit court was clearly a final judgment.

The second requirement, identity of causes of action, is also met. A cause of action consists of a single core of operative facts which gives the plaintiff a right to relief. (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 421 N.E.2d 278.) If the same facts or evidence is essential to both proceedings, then identity exists between them and the latter action is barred by *res judicata*. (*People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 295, 602 N.E.2d 820, 825.) Edelson contends that when the court issued its stay order, the issue before the court was not whether Edison and its consumers would ultimately be entitled to a tax refund from the taxing authorities, but rather that Edison would not be liable for tax refunds. However, we do not find the fact that the issue which is now being raised was not raised earlier to be conclusive as to whether the causes of action have sufficient identity to satisfy *res judicata*. The single group of operative facts which are common to both cases is the underlying appeal of the Commission's rate increase and, ultimately, the stay order. Since the same facts are necessary for the maintenance and proof in both cases, the causes of action are identical.

The final requirement for *res judicata* to apply is that there be identity of the parties or privity. In other words, we must ask whether Edelson's interests were adequately represented when the May 1986 stay order was entered. Edelson argues that the "taxpayer class" was not represented in the rate case. Further, Edelson contends that many of the intervenors in the rate case had conflicts of interest with the taxpayer because in other contexts they represent the taxing bodies.

We do not find Edelson's argument persuasive. The Attorney General, the State's Attorney, and various other governmental and consumer groups appealed the rate increase on behalf of the People. We find no distinction between the consumer and the taxpayer, as they are one and the same. We further note that when issuing its rate methodology order, the court noted that the May 1986 order was essentially a refund guarantee which would never have been bestowed upon them absent the provision in paragraph 7 of the stay order. The court stated:

> "[T]he paragraph 7 provision assures government, state and local, that there would be no risk in planning, appropriating and spending electric utility tax funds during the months or years

of appellate review and that governmental services in future years would not be faced with cut-backs because utility taxes collected and spent in prior years must be refunded out of some future year's receipts."

In exercising its equitable jurisdiction, the court essentially guaranteed the consumer's refund throughout the appellate process. As noted in *Hartigan II*, "Without the circuit court's condition retaining jurisdiction over a potential refund, consumers may have been required to pay improper rates throughout the appellate process without a remedy." (*Hartigan*, 148 Ill. 2d at 404, 592 N.E.2d at 1092.) However, the court would not have protected the consumer's interest in a refund without also assuring that the taxing bodies' interests were also protected. The consumer benefited in the form of a guaranteed refund and the taxpayer had to pay the price, albeit a small one. Their interests were intertwined and their interests were both adequately represented in the May 1986 order.

We conclude that the elements of *res judicata* are present in the instant matter and Edelson's complaint was barred by the judgment in the rate case and properly dismissed. We further conclude that since the court's finding of *res judicata* was proper, Edelson's due process rights were not violated because her interests were adequately represented, and since the rate case was not a class action suit, there was no requirement of notice to each individual consumer.

In light of our findings, we need not address Edelson's arguments that her complaint properly stated a cause of action and that the taxing bodies were not necessary parties in her suit. The judgment of the circuit court is affirmed.

Affirmed.

CAHILL and JOHNSON, JJ., concur.