655 N.E.2d 1040 (1995)
275 Ill.App.3d 128
211 Ill.Dec. 657
In re ESTATE OF George Archer MUELLER, Deceased.
Lyn ZIELINSKI, George Frederick Mueller, Phillip Randy Mueller and Daniel Archer Mueller, Petitioners-Appellants,
v.
Constantina HENKE a/k/a Constantina Mueller, Nicholous Henke, and Konstandina Henke, Respondents-Appellees (J. Arnold Mueller, Intervenor-Appellant).
Nos. 1-93-2815, 1-93-3649 and 1-93-3879.
Appellate Court of Illinois, First District, First Division.
September 5, 1995.
*1041 Novack and Macey (P. Andrew Fleming, of counsel), Chicago, for appellants.
Philip J. Schmidt, Chicago, for intervenor-appellant.
Porikos, Rodes & Economos, P.C., Arlington Heights (Theodore Rodes, Jr., of counsel), for appellees.
Cowen, Crowley & Nord, P.C., Chicago (Richard A. Cowen and Daniel J. Fumagalli, of counsel), for estate of George Archer Mueller.
Presiding Justice CAMPBELL delivered the opinion of the court:
This is a consolidated appeal. Initially, we are called upon to address the interlocutory appeal by appellants, Lyn Zielinski, George *1042 Frederick Mueller, Phillip Randy Mueller and Daniel Archer Mueller, of an August 4, 1993, order of the circuit court of Cook County, determining the method for the administration and distribution of the estate of their deceased father, George Archer Mueller (Mueller). The trial court certified the following question of law to the appellate court, pursuant to Illinois Supreme Court Rule 308, (134 Ill.2d R. 308):
"Whether individuals who are named as contingent beneficiaries in a will may take property under that will when the original taker is precluded under Section 2-6 of the Probate Act of 1975 (Probate Act), (755 ILCS 5/2-6 (West 1992)), and the contingent takers are heirs of the precluded person but not of the testator."
We answer this question in the negative.
In addition, J. Arnold Mueller, (J. Arnold) Mueller's twin brother, appeals a separate order of the circuit court, entered on September 16, 1993, denying his petition to intervene in the estate proceedings. We affirm this order of the circuit court.
The record reveals the following relevant facts. Mueller married respondent Constantina Henke (Henke) in November 1984. At that time, Henke had two children from a previous marriage, Nicholous and Konstandina Henke (Henke children).
On March 19, 1985, Mueller executed a Last Will and Testament (Will) purporting to leave a house in Frankfort, Illinois and fifty percent (50%) of his estate to Henke. The balance of the residue of his estate was to pass to appellants. Article VII of the Will provides as follows:
"Should, however, my wife CONSTANTINA MUELLER, predecease me or fail to survive me by (30) days, then the gifts, devises and bequests to CONSTANTINA MUELLER shall fail and be of no effect, and in that event, I give, devise and bequeath her share of the residue of my estate, including the house at 910 Abbots-ford Lane, Frankfort, Illinois whether real, personal or mixed, of every kind, nature and description whatsoever, and wherever situated, which I may now own or hereafter acquire, or have the right to dispose of at the time of my death, by the power of appointment or otherwise, to her children, KONSTANDINA HENKE, NICHOLOUS HENKE who survive me, absolutely and in fee simple, share and share alike."
Mueller subsequently executed a Codicil to the Will (Codicil) on September 10, 1985, purporting to increase Henke's share of the estate from fifty percent to sixty percent (60%) with a corresponding decrease from fifty percent (50%) to forty percent (40%) to appellants.
On March 28, 1986, Mueller was shot dead at his place of business in Blue Island, Illinois.
On April 10, 1986, J. Arnold filed a petition to admit into probate a prior will of Mueller's dated February 25, 1971. At that time, the court issued letters of administration to J. Arnold.
However, upon Henke's petition, the probate court revoked the letters of office issued to J. Arnold, and admitted to probate on May 15, 1986, Mueller's Will and Codicil.
Appellants filed a petition contesting the Will and Codicil on October 17, 1986.
On July 15, 1987, Henke and Blue Island Police Officer Ronald Tellez were arrested and charged with Mueller's murder. Subsequently, the probate court granted appellants' motion to remove Henke as executrix of Mueller's estate, and on July 27, 1987, appointed Richard Cowen as Special Administrator of Mueller's estate.
Appellants filed a petition to strike portions of the Will and Codicil on December 4, 1989. Four days later, the probate court appointed Theodore Rodes, Jr. Guardian Ad Litem (Guardian) for Henke's minor children.
On December 13, 1989, Henke entered into a plea of guilty for the solicitation to commit Mueller's murder, stipulating that she in fact arranged for Tellez to kill Mueller so that she could collect sixty-percent of Mueller's estate. Henke received a sentence of ten-years imprisonment, pursuant to a prior agreement. On January 5, 1990, the Guardian filed a motion to strike and dismiss appellants' *1043 petition to strike portions of the Will and Codicil.
A hearing commenced on both parties motions to strike on July 7, 1993. At the hearing, appellants' counsel revealed that one of the Henke children was no longer a minor, and that Henke was no longer in prison. Counsel further indicated that the Henke children never lived with Mueller, and suggested that the marriage was in fact a "sham."
On August 4, 1993, the trial court made the following findings of fact: On December 13, 1989, Henke was convicted of solicitation to commit the murder of Mueller, and was sentenced to ten-years imprisonment. Henke is now released from prison. Pursuant to section 2-6 of the Probate Act (755 ILCS 5/2-6), Henke intentionally and unjustifiably caused Mueller's death, and is therefore precluded from receiving any property, benefit or other interest under Mueller's Will. Mueller's Will provides that if Henke is to predecease him, her portion of the estate passes in its entirety to Henke's children, who are not Mueller's natural heirs. Appellants are Mueller's natural heirs. Pursuant to section 2-6 of the Act, Henke's children are not precluded from receiving any property, benefit or other interest under Mueller's Will.
The trial court entered an order granting in part and denying in part appellants' motion to strike portions of Mueller's Will and Codicil. The trial court ordered that Mueller's estate be administered and distributed as if Henke had died prior to Mueller, and subject to a determination of a will contest. The trial court further ordered that the Henke children are eligible to receive the distributions due them pursuant to Mueller's Will. Finally, the trial court found that a question of law exists as to whether individuals who are named as contingent beneficiaries in a will may take property under that will when the original taker is precluded under Section 2-6 of the Probate Act, (755 ILCS 5/2-6 (West 1992)), and the contingent takers are heirs of the precluded person but not of the testator, and allowed an immediate appeal to this court pursuant to Supreme Court Rule 308. 134 Ill.2d R. 308.
Appellants filed their application for leave to appeal the question of law posed by the trial court pursuant to Rule 308(b) on August 17, 1993, and this court granted a permissive interlocutory appeal on October 6, 1993. The record shows that Appellants filed an additional appeal of the trial court's order on November 5, 1993.
Meanwhile, on July 2, 1993, J. Arnold filed a petition to intervene in the estate proceedings. Following a hearing on September 16, 1993, the trial court denied J. Arnold's petition.
J. Arnold filed his timely appeal of the trial court's order on October 14, 1993. This court consolidated the parties' appeals.
Initially, appellants contend that the trial court erred in determining that the Henke children are eligible to receive the distributions due them pursuant to Mueller's WIll.Appellants argue that the question of law posed by the trial court, "whether individuals who are named as contingent beneficiaries in a will may take property under that will when the original taker is precluded under section 2-6 of the Probate Act and the contingent takers are heirs of the precluded person but not of the testator," must be answered in the negative. The facts of this case present a case of first impression in Illinois.
Section 2-6 of the Probate Act precludes a person who unjustifiably causes the death of another from inheriting the property of the decedent. (755 ILCS 5/2-6 (West 1992).) This statute, commonly known as a "Slayer Statute," provides as in pertinent part as follows:
"§ 2-6. Person causing death. A person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death, whether as heir, legatee, beneficiary, joint tenant, survivor, appointee or in any other capacity and whether the property, benefit, or the interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance. The property, benefit, or other interest shall *1044 pass as if the person causing the death died before the decedent, provided that with respect to joint tenancy property the interest possessed prior to the death by the person causing the death shall not be diminished by the application of this Section.
* * *
A person convicted of first degree murder or second degree murder of the decedent is conclusively presumed to have caused the death intentionally and unjustifiably for purposes of this Section." 755 ILCS 5/2-6 (West 1992).
In interpreting section 2-6, this court is guided by certain well-established principles of statutory construction. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. (Eagan v. Chicago Transit Authority (1994), 158 Ill.2d 527, 531, 199 Ill.Dec. 739, 634 N.E.2d 1093.) Legislative intent is best determined by the statutory language, which should be given its plain and ordinary meaning. Eagan, 158 Ill.2d at 532, 199 Ill. Dec. 739, 634 N.E.2d 1093, (citing Thomas v. Greer (1991), 143 Ill.2d 271, 278, 158 Ill.Dec. 1, 573 N.E.2d 814).
Appellants contend that the trial court improperly failed to extend the application section 2-6 to the Henke children, so that they could not obtain property pursuant to Mueller's Will. In support, appellants look to cases outside of this jurisdiction.
Appellants rely initially on Section 252 of the California Probate Code, entitled "Life Insurance and other beneficiary designations," (Cal.Prob.Code § 252 (West 1991)), and its accompanying Law Revision Commission Comments. Section 252 provides:
"A name beneficiary of a bond, life insurance policy or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent." (Cal.Prob. Code § 252 (West 1991).)
The Law Revision Commission Comments to Section 252 state that:
"Under Sections 252 and 253, if the killer is treated as having predeceased the decedent for the purpose of life insurance or other contractual heir, the killer's heirs are similarly disqualified. See Meyer v. Johnson, 115 Cal.App. 646, 2 P.2d 456 (1931)." Law Review Commission Comments, 1990.
In Meyer v. Johnson (1931), 115 Cal.App. 646, 2 P.2d 456, an insurance policy issued on the life of Hazel Johnson, naming her husband, Granville, as primary beneficiary. Granville murdered Hazel and was convicted and sentenced to life imprisonment, and therefore deemed ineligible to recover on the insurance policy. The trial court made this determination based on public policy grounds and case law, as California apparently had no slayer statute at that time. (Meyer, 2 P.2d at 456.) The trial court determined that the insurance proceeds became the property of Granville's heirs, rather than Hazel's sole heir, her minor son Robert William Paul, who was not an heir of Granville.
The appeals court reversed, finding that the insurance proceeds were properly payable to Hazel's estate, for the benefit of Paul, Hazel's heir, and not to Granville's heirs. The court based its judgment on cases outside of its jurisdiction which addressed the payment of insurance proceeds in the situation where the beneficiary murdered the insured, and the policy designated no beneficiary:
"If the beneficiary murders the member, and so loses his rights as such * * * the fund may be recovered by such other persons (clearly the heirs of the insured) as would take had no beneficiary been designated." Meyer, 2 P.2d at 456-7 (citing Schmidt v. Northern Life Association (1900), 112 Iowa 41, 83 N.W. 800, 51 L.R.A. 141, 84 Am.St.Rep. 323, and The Supreme Lodge Knights and Ladies of Honor v. Menkhausen (1904), 209 Ill. 277, 70 N.E. 567 (heirs of husband who murdered wife cannot recover on insurance policy naming husband as beneficiary; rather, proceeds are payable to wife's heirs)).
Appellants further rely on In re Estate of Safran (1981), 102 Wis.2d 79, 306 N.W.2d 27. *1045 Safran involved the distribution of the estate of the Helen Safran. In her will, Helen gave all of her estate to her son Bernard in trust, and further provided that if Bernard predeceased Helen without issue, the estate be equally divided among other relatives. Bernard was convicted of causing Helen's death by reckless conduct. At the time, Wisconsin had no slayer statute. The trial court determined that Bernard was disqualified from inheriting under Helen's will, based on the common law maxim, "no one can attain advantage by his own wrong." (Safran, 306 N.W.2d at 29.) However, the trial court found that although Bernard had no children at the time of Helen's death, the entirety of Helen's estate must be held in trust for the benefit of any issue that might be born to Bernard.
On appeal, the court remanded the cause for a determination of whether Bernard is guilty of intentional homicide, holding that if so, Bernard would be disqualified from inheriting under the will. In addition, the court specifically stated:
"The rule that persons directly related to the murderer are disqualified with him, is premised on the indirect benefits that would thereby flow to the murderer himself. Although we do not foreclose the possibility that the rule would not be applied in every situation, we consider the interests of children neither born nor conceived to be too remote to consider an exception under the facts of this case." Safran, 306 N.W.2d at 37.
In the present case, the trial court opined that Illinois law was closer to Florida law, and the cases relied upon by appellees. Florida has a slayer statute as follows:
"A surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate code, and the estate of the decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent." § 732.802(1), Fla.Stat. (1985).
Appellees initially rely on In re Estate of Benson (Fla.Dist.Ct.App. 1st Dist.1989), 548 So.2d 775. There, the court determined the beneficiaries of the estate of Margaret Benson, the mother of Carol, Steven and Scott. Steven murdered both Margaret and Scott, and was convicted of their murders. Margaret's will bequeathed her property all three children. Scott died intestate, and by law Carol and Steven were his legal heirs. Under the Florida slayer statute, Steven was precluded from participating as a beneficiary in either Margaret's will or Scott's estate. This left Carol as sole beneficiary unless Steven's children were allowed to participate. The trial court determined that the statute did not prevent Steven's minor children from inheriting their father's share under either estate. Benson, 548 So.2d at 776.
On appeal, Carol argued that the public policy of Florida required that Florida's slayer statute be extended to prevent Steven's children from sharing in either Margaret's or Scott's estates. The appeals court rejected Carol's contention, stating as follows:
"We find the statutory language clear and unambiguous. If there is to be declared in Florida such a public policy as appellant urges, it must be accomplished by a legislative amendment to the Slayer Statute and not by a pronouncement of this court." Benson, 548 So.2d at 777.
Benson is distinguishable from the present case in that the inheriting heirs at issue are the blood relatives of the testator, and would stand to inherit from Margaret in the absence of a will. In the present case, the Henke children are not the blood relatives of Mueller, and would not inherit from him under probate law, absent Mueller's Will.
Appellees further rely on Lopez v. Rodriguez (Fla.Dist.Ct.App.3d Dist.1991), 574 So.2d 249. There, the Florida appeals court determined that the proceeds of a Totten trust account held by Clemente and Isabel Rodriguez were properly released to Carlos Rodriguez, Clemente's natural son, after Clemente murdered Isabel and then committed suicide. Carlos was not Isabel's natural heir, and Isabel did not adopt him. The accounts were held in trust for Carlos. Lourdes Lopez, a personal representative of *1046 Isabel's estate contended that Clemente's act of killing Isabel revoked the trusts, thereby entitling Isabel's heirs to receive 50% interest in the funds.
The court held that the Florida slayer statute did not provide that the killing effects a revocation or disaffirmance of a Totten trust, and that to rule in favor of Lopez would in effect improperly re-write section 732.802(2) of the Florida statute, which provides as follows:
"Any joint tenant who unlawfully and intentionally kills another joint tenant effects a severance of the interest of the decedent so that the share of the decedent passes as the decedent's property and the killer has no rights by survivorship." § 732.802(2), Fla.Stat. (1989).
The court stated:
"The statute seeks to insure that `no person should be permitted to benefit from his own wrong,' (citations omitted), and terminates the killer's rights by survivorship. Carlos, the killer's son, was not alleged to be culpable in Isabel's death. We decline to hold that the legislature intended the statute to deprive an innocent beneficiary of the trust proceeds." Lopez, 574 So.2d at 250.
Lopez is also distinguishable from the present case. Because Clemente committed suicide after he murdered Isabel, there was no danger that he could benefit indirectly from Isabel's estate through Carlos. That danger is inherent in the present case.
Lastly, appellees rely on In re Estate of Fairweather (Fla.Dist Ct.App.2d Dist.1984), 444 So.2d 464. There John Fairweather's will devised his entire estate to his second wife and in the event she predeceased him to appellees, the children of John and his second wife. John died from a gunshot wound inflicted by his second wife, who subsequently pled guilty to second degree murder. The trial court found that by operation of section 732.802, Florida Statutes (1981), John's entire estate would pass to appellees. Appellants, a half brother, brother, and John's children of his first marriage, argued on appeal that John's property should be distributed in accordance with the laws of intestate succession.
The appeals court disagreed, and affirmed the decision of the trial court based on the statute then in effect which provided as follows:
"A person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any part of his estate as a devisee. The part of the decedent's estate to which the murderer would otherwise be entitled shall pass to the persons entitled to it as though the murderer had died during the lifetime of the decedent." § 732.802, Fla.Stat. (1981).
The court stated:
"[T]he statute itself is clear. The decedent's estate `shall pass as though the murdered [the second wife] had died during the lifetime of [the] decedent.' Id. Appellees are entitled to the entire estate under the will." Fairweather, 444 So.2d at 465.
Fairweather is similarly distinguishable because the inheriting parties were the natural children of John by his second marriage. Thus, they would be eligible to inherit notwithstanding John's will.
We find the Florida cases inapplicable to the present case. Although section 2-6 does not specifically address the fact pattern currently before this court, we find that the public policy of Illinois prohibits the Henke children from taking under Mueller's Will under the specific facts and circumstances of this case. The record indicates that Henke is still alive, and is the guardian of her minor child. Under these circumstances, there exists a danger that Henke could take property through her child, derived from Mueller, and despite her wrongful and criminal act of murder.
The recent case of Vallerius v. White (In re Estate of Vallerius) (1994), 259 Ill.App.3d 350, 196 Ill.Dec. 341, 629 N.E.2d 1185, is instructive. There, Douglas White murdered his grandmother, Adella Vallerius. On the same day, Douglas' brother, Craig White, murdered his grandmother's friend, Carroll Pieper. Douglas was convicted of Vallerius' murder, and Craig was convicted the murder of Carroll Pieper.
*1047 Vallerius' will named Douglas and Craig as her sole beneficiaries. Vallerius' only natural heir was her daughter, Renie White, Douglas and Craig's mother. Two and one-half months after Vallerius' murder, White died intestate leaving Douglas and Craig as her natural heirs.
Appellees, other grandchildren of Vallerius, contested the distribution of both Vallerius' and White's estates. After a hearing, the trial court determined that under both statute (section 2-6) and common law, the public policy of Illinois has long been to prevent wrongdoers from profiting from intentionally committed wrongful acts. (Vallerius, 259 Ill. App.3d at 351-52, 196 Ill.Dec. 341, 629 N.E.2d 1185, citing State Farm Life Insurance Co. v. Davidson (1986), 144 Ill.App.3d 1049, 99 Ill.Dec. 139, 495 N.E.2d 520.) The trial court determined that Douglas and Craig were prohibited from obtaining any inheritance either through Vallerius' will, or through White's estate. Vallerius, 259 Ill. App.3d at 352-53, 196 Ill.Dec. 341, 629 N.E.2d 1185.
This court affirmed, finding that section 2-6 prohibited Craig from receiving any benefit by reason of the death of Vallerius, "whether through her estate directly or indirectly through the estate of her daughter, Renie White." This court found that to allow Craig to receive any property, benefit, or interest from the estate of Renie White, would directly contravene the statute's "unambiguous mandate that he not receive any property by reason of his grandmother's death in any capacity or by any circumstance, because Craig White is one who caused the death of Mrs. Vallerius." Vallerius, 259 Ill.App.3d at 354, 196 Ill.Dec. 341, 629 N.E.2d 1185. (Emphasis added). The court explained:
"We cannot construe the broad language of the statute in so technical and rigid a fashion that its application violates longstanding public policy or serves to unjustly increase the estate of one who participates in murder. (Bradley v. Fox (1955), 7 Ill.2d 106, 129 N.E.2d 699.) Furthermore, the catchall words, [in section 2-6] "in any other capacity" and "any other circumstance," are intended to apply to unique factual circumstances such as this. Statutes, by their very nature, must apply to a broad range of actual scenarios. Moreover, the legislature certainly cannot be expected to prophesy and list in advance the infinite ways in which a statute such as this may need to be applied in the future. We will not read into the statute words of limitation that are not there, particularly since the limitation espoused by appellants would be directly contrary to the strong public policy that murderers should be denied the fruits of their crimes. Bradley v. Fox (1955), 7 Ill.2d 106, 129 N.E.2d 699." Vallerius, 259 Ill.App.3d at 354-55, 196 Ill.Dec. 341, 629 N.E.2d 1185.
The present case reveals unique facts and circumstances which require application of section 2-6 to prohibit the Henke children from taking under Mueller's will. We therefore answer the trial court's question in the negative, and reverse the judgment of the trial court ordering distribution of the Mueller estate to the Henke children. In light of our decision, we need not reach appellants further contention that this matter be remanded to the trial court for a hearing on the testator's intent.
We now turn to J. Arnold's contention that the trial court erred in denying his petition to intervene in the Mueller estate proceedings.
Before addressing the merits of this appeal, we have an obligation to determine whether we have jurisdiction, even though the issue was not raised by the parties. (In re Marriage of Betts (1987), 159 Ill.App.3d 327, 330, 110 Ill.Dec. 555, 557, 511 N.E.2d 732, 734.) The jurisdiction of the appellate court is limited to the review of appeals from final judgments, subject to statutory or supreme court exceptions. In re Marriage of Verdung (1989), 126 Ill.2d 542, 553, 129 Ill.Dec. 53, 58, 535 N.E.2d 818, 823.
Supreme Court Rule 304(a) provides for discretionary appeals from final judgments that do not dispose of an entire proceeding, "only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (134 Ill.2d R. 304(a).) Although the trial court's order did not include the special *1048 language of the rule, J. Arnold cites as a basis for jurisdiction Supreme Court Rule 304(b)(1), which provides as follows:
"(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:
(1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." (134 Ill.2d R. 304(b)(1).)
Rule 304(b)(1) promotes efficiency and provides certainty by allowing appeal as to some issues as those issues are resolved during the lengthy procedure of estate administration. (See Yardley v. Yardley (1985), 137 Ill. App.3d 747, 750-51, 92 Ill.Dec. 142, 145, 484 N.E.2d 873, 876.) For purposes of appellate jurisdiction, only those orders which "finally" determine the right or status of a party are subject to Rule 304(b)(1). In re Estate of Nelson (1993), 250 Ill.App.3d 282, 190 Ill.Dec. 212, 621 N.E.2d 81; In re Estate of Devey (1993), 239 Ill.App.3d 630, 180 Ill.Dec. 616, 607 N.E.2d 685.
In the present case, the trial court's order of September 16, 1993, finally determines J. Arnold's right to participate in the estate proceedings. Therefore the judgment entered by the trial court is a final and appealable order and is sufficient to confer jurisdiction on this court under Rule 304.
J. Arnold argues that he is Mueller's heir at law, and therefore has an absolute right to intervene as an interested party and a legatee under a prior will.
Intervention may be permissive or as a matter of right. A party is allowed to intervene as of right when a statute confers the unconditional right to intervene, when a party who will be bound by an order or judgment in the action will not be adequately represented by existing parties, or when a party will be adversely affected by the disposition of property subject to the control of the court. (735 ILCS 5/2-408(a) (West 1992).) Permissive intervention is subject to the court's discretion and may be allowed when a statute confers a conditional right to intervene or when an applicant's claim and the main action concern a common question of law or fact. (735 ILCS 5/2-408(b) (West 1992).) In the case of both permissive intervention and intervention as of right, the application to intervene must be made in a timely manner. (People ex rel. Hartigan v. Illinois Commerce Commission (1993), 243 Ill.App.3d 544, 548, 183 Ill.Dec. 673, 611 N.E.2d 1321.) Absent a clear abuse of discretion, the trial court's judgment in these matters will not be reversed on appeal. Hartigan, 243 Ill.App.3d at 548, 183 Ill.Dec. 673, 611 N.E.2d 1321.
J. Arnold argues that his unconditional right to intervene in the will contest is derived from section 8-1(d) of the Probate Act, which grants a right to contest the validity of a will to "the heir, legatee, representative, grantee or assignee of the person entitled to institute the proceeding." (755 ILCS 5/8-1(d) (West 1992).) J. Arnold's argument fails because he is not an "heir at law." Section 2-1 of the Probate Act sets forth the rules of descent and distribution as follows:
"The intestate real and personal estate of a resident decedent and the intestate real estate in this State of a nonresident decedent, after all just claims against his estate are fully paid, descends and shall be distributed as follows:
"(b) If there is not surviving spouse but a descendant of the decedent: the entire estate to the decedent's descendants per stirpes." (755 ILCS 5/2-1(b).)
As such, appellants, Mueller's natural children, are Mueller's heirs at law.
As stated above, all rights of intervention must be timely. (735 ILCS 5/2-408(a) (West 1992).) Section 8-1 provides that a contest must be made within six months after the admission of the will to probate. (755 ILCS 5/8-1 (West 1992).) The determination of the timeliness of a petition to intervene is left to the discretion of the trial court. (RTS Plumbing Co. v. DeFazio (1989), 180 Ill.App.3d 1037, 1042, 129 Ill.Dec. 786, 536 N.E.2d 836.) Factors considered in making this determination include: when the intervenors became aware of the litigation; the amount of time that elapsed *1049 between the initiation of the action and the filing of the petition to intervene; and the reason for the party's failure to seek intervention at an earlier date. RTS, 180 Ill. App.3d at 1042, 129 Ill.Dec. 786, 536 N.E.2d 836.
In the present case, the record shows that Mueller's Will was admitted to probate on May 15, 1986. The appellants filed a petition contesting Mueller's Will on October 17, 1986, and J. Arnold was aware of the appellants' petition. J. Arnold failed to seek leave to intervene in the Will until July 2, 1993, and has provided no reason for his delay.
J. Arnold's reliance on In re Estate of Keener (1988), 167 Ill.App.3d 270, 118 Ill.Dec. 164, 521 N.E.2d 232, and In re Estate of Watson, (1984), 127 Ill.App.3d 186, 82 Ill.Dec. 289, 468 N.E.2d 836, is misplaced. In both cases, the plaintiffs filed timely petitions contesting a will.
Here, the facts show that J. Arnold's petition to intervene came many years too late. In addition, J. Arnold has failed to provide support for his contentions that he is either a necessary or interested party, or for his alleged absolute right to intervene. We therefore find that the trial court properly denied J. Arnold's petition to intervene.
For the reasons stated above, we reverse in part, and affirm in part the judgment of the trial court.
Reversed in part; affirmed in part.
BUCKLEY and WOLFSON, JJ., concur.