BOARD OF EDUCATION OF SUNSET RIDGE SCHOOL DISTRICT No. 29, Plaintiff-Appellant, v. THE VILLAGE OF NORTHBROOK *et al.*, Defendants-Appellees (E. Leonard Rubin *et al.*, Intervenors-Appellants).

First District (5th Division)   No. 1—97—1949

Opinion filed March 20, 1998.

Altheimer & Gray, of Chicago (Jack M. Siegel, of counsel), for appellant Board of Education of Sunset Ridge School District No. 29.

E. Leonard Rubin, of Chicago, for appellants E. Leonard Rubin and Audrey Rubin.

Burk, Weaver & Prell, of Chicago (Steven Elrod and Matthew Norton, of counsel), for appellee Village of Northbrook.

Rudnick & Wolfe, of Chicago (Theodore H. Shapero and John Burke, of counsel), for appellee RKZ Venture Group, L.L.C.

Schiff, Hardin & Waite, of Chicago (Heidi Dalenberg, of counsel), for appellee Cole-Taylor Bank.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Board of Education of Sunset Ridge School District Number 29, and the intervenors, E. Leonard and Audrey Rubin, appeal from the trial court's dismissal of their complaint with prejudice on the basis of *res judicata*.

On December 15, 1988, the defendant, Village of Northbrook (the Village), entered into an annexation agreement with the Society of the Divine Word (the Society). The annexation agreement established the terms for the annexation, zoning and development of a 770-acre parcel of property, commonly known as the "Techny Property," of which the Society was the beneficial owner. At the time the Village and the Society entered into the annexation agreement, article IV, subsection F, paragraph 1, of the Northbrook subdivision ordinance provided that the Village's board of trustees could not approve any

final plat for a subdivision until the developer, subdivider or owner of the property presented evidence that it had a written agreement with the local school district for dedication of land, a cash contribution or a waiver of the required contributions.

Section 12(e) of the annexation agreement, however, provided that the Society or the developer of the Techny Property was required to make these contributions to a school district only if that district had an adopted written policy for land or fee donations in effect prior to June 21, 1988. The plaintiff is a public school district that owns property in the Villages of Northfield and Northbrook and operates two schools in the Village of Northfield. It adopted a formula for cash or land donations for developers on September 8, 1988, and informed the Village of that formula prior to the adoption of the annexation agreement.

On August 8, 1989, the Village's board of trustees adopted ordinance number 89—50, annexing the Techny Property, and ordinance number 89—53, amending the Village's zoning map by establishing zoning classifications for the Techny Property. The parcel at issue in this action was zoned for R-8 multifamily residential use. Also on that date, the board of trustees adopted resolution number 89—R—124, which approved certain variations to the Northbrook subdivision ordinance. Section 3, subparagraph g, of that resolution provided that "notwithstanding Article IV, Paragraph 1, Subsection F of the Subdivision Ordinance," neither the Society nor any developer was required to present evidence of an agreement or waiver regarding contributions to any school district that did not have an adopted written policy regarding those contributions in effect on or before June 21, 1988.

In 1990, the plaintiff filed a complaint against the villages and park districts of Northbrook, Northfield and Glenview, Northfield Township, Elementary School District Numbers 28, 30 and 34 and High School District Numbers 203 and 225. The Society intervened as a defendant in that action. Each of the five counts in the plaintiff's 1990 complaint was based on a written contract entitled the "Techny Area Land Use and Boundary Agreement" (Techny Agreement), which the plaintiff and the original defendants had entered into July 1, 1975. The parties in the instant case do not dispute that the Techny Agreement governed the same property referred to herein as the Techny Property.

In count I of its 1990 complaint, the plaintiff alleged that the Village, which had annexed a portion of the Techny Property, had breached its contractual obligations by passing ordinances allowing land usage, density and zoning inconsistent with the Techny Agree-

ment. The plaintiff alleged that, as a result of the improper development, there would be a substantial traffic increase within its boundaries that would harm the educational environment and endanger the student population. The plaintiff sought injunctions requiring the Village to rescind the ordinances in question, to use its best efforts to require land usage, density and zoning consistent with the Techny Agreement, and to discontinue cooperation with development inconsistent with the Techny Agreement.

In count II of the 1990 complaint, the plaintiff alleged that the Village had breached the Techny Agreement by failing to submit plans for development of the Techny Property to a designated commission prior to adopting ordinances that specified permitted uses for the property. The plaintiff sought an injunction requiring the Village to submit future ordinances or development plans to the commission for review and to use its best efforts to ensure that those ordinances or plans conformed with the Techny Agreement. In counts III and IV, the plaintiff requested an injunction requiring the Village to rescind its annexation of those portions of the Techny Property that extended beyond boundaries established by the Techny Agreement.

In count V, the plaintiff sought monetary damages for the expenses it would incur to preserve the educational environment of its schools and the health and safety of its students in light of the substantial increase in traffic. The plaintiff alleged that such expenses might include physical improvements to its facilities to lessen noise interference and pollution, the purchase, operation and maintenance of school buses, and the enlargement of existing facilities or erection of new facilities to accommodate the increased student population.

On October 9, 1990, the trial court granted motions to dismiss the plaintiff's complaint with prejudice in favor of all the defendants, finding that the plaintiff lacked standing, the Techny Agreement was unenforceable, the action was barred by the statute of limitations and *laches*, and the plaintiff was equitably estopped from enforcing the Techny Agreement. The plaintiff did not appeal the trial court's ruling.

On October 14, 1996, the Village's board of trustees adopted ordinance number 96—46 and resolution number 96—R—155 granting the defendant RKZ Venture Group, L.L.C. (RKZ), a special use permit, site plan and plat of subdivision for a residential 151-unit planned development known as "Royal Ridge." The Royal Ridge parcel, which fell within the Techny Property, occupied 47.95 acres zoned for R-8 multifamily residential use.

On December 30, 1996, the plaintiff filed a complaint against the

Village, RKZ, the lessee of the property, Romanek Properties, Ltd., the managing partner of the development project, and Cole-Taylor Bank, as trustee, the owner of the land (the Trustee). In its complaint, the plaintiff alleged that the Village had enforced its ordinance regarding developer contributions to school districts with regard to other school districts but not with regard to the plaintiff and the Royal Ridge development. The plaintiff also alleged that a consultant had projected the Royal Ridge development would increase its schools' enrollment by 76 students, plus or minus 25%, for a 16% increase in student population. In order to accommodate this increase, the plaintiff would need to construct additional classrooms and enlarge areas used for athletic programs, libraries, teaching and technology centers and cafeterias, at an estimated construction cost of $2,293,200. The plaintiff further alleged that the manner in which taxes were levied and collected, effective March 25, under the Property Tax Extension Limitation Law (35 ILCS 200/18—185 (West 1996)), which became effective in March 1995, resulted in an 18-month time lag in the collection of taxes on a parcel of property after it became occupied. It alleged that the cost associated with the lag in tax collection for 76 students was $689,396 for one year.

In count I of its 1996 complaint, the plaintiff asserted that it was denied equal protection of the laws because other school districts in the Village had uniformly received land or cash contributions from developers in accordance with the subdivision ordinance. The plaintiff requested a declaratory judgment that the defendants RKZ and Romanek Properties were required to make contributions and an injunction prohibiting the Village from issuing any building permits or permitting further development until the contributions were made.

In its second count, the plaintiff alleged that R-8 multiple-family residential zoning for the Royal Ridge parcel was arbitrary, unreasonable and detrimental to the public health, safety and welfare. The plaintiff alleged the residential zoning was inappropriate because of the contiguous land uses, including a parcel of R-8 multifamily residentially zoned property being used as a garage and storage facility but under contract to be used as a maintenance facility. The plaintiff alleged that a residential development in that location would create traffic hazards and pose a threat to children traveling to and from school. The plaintiff further alleged that the Royal Ridge development failed to meet the standards for a special use permit under section 11—602 of the Village's zoning code, which required that the proposed use be served adequately by essential public facilities, such as schools, and that it not cause undue traffic congestion. The plaintiff sought a judgment declaring the rights of the parties

and finding that the special use permit was void because it violated the zoning code.

In its third count, erroneously numbered count IV, the plaintiff asserted that section 12 of the annexation agreement, which limited land or cash contributions to school districts, violated the Village's subdivision ordinance and section 11—15.1—2 of the Illinois Municipal Code (65 ILCS 5/11—15.1—2 (West 1996)). It requested a declaratory judgment that section 12 of the annexation agreement was invalid so far as it purported to eliminate the school district contribution requirement.

In its fourth count, erroneously numbered count V, the plaintiff alleged that it was entitled to the required contributions because it was a third-party beneficiary of the provisions of the subdivision ordinance. The plaintiff prayed for a judgment in its favor and against the defendants RKZ, Romanek Properties and the Trustee.

On March 10, 1997, the defendants filed a joint motion to dismiss the plaintiff's complaint pursuant to section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1996)) and a memorandum in support of that motion. The defendants asserted that: all counts were barred by *res judicata*, the one-year statute of limitations applicable to annexation challenges and the doctrine of *laches*; the plaintiff lacked standing to challenge the zoning and the special use permit and to assert an equal protection claim; the plaintiff was not a third-party beneficiary of the subdivision ordinance; the Village had not violated the subdivision ordinance; and all counts against Romanek Properties must be dismissed because the complaint did not allege that Romanek Properties had an ownership interest in the Royal Ridge parcel.

On April 28, 1997, the trial court conducted a hearing on the defendants' joint motion to dismiss. At that hearing, the trial court granted the intervenors, E. Leonard and Audrey Rubin, leave to intervene and adopt the plaintiff's pleadings. The intervenors were residents of the plaintiff school district and had two children attending the plaintiff's schools. At the conclusion of the hearing, the trial court sustained the defendants' joint motion to dismiss on the basis of *res judicata*, finding that the claims raised in the complaint could have been raised in the 1990 action.

On appeal, the plaintiff and the intervenors contend that the trial court erred in dismissing the complaint on the basis of *res judicata* because there was not identity of the causes of action or parties. The defendants contend that dismissal on the basis of *res judicata* was proper and that this court could alternatively affirm the dismissal based on the other grounds asserted in their motion to dismiss. This

court reviews the trial court's ruling on a motion to dismiss *de novo* and can affirm on any basis present in the record. *Pryweller v. Cohen*, 282 Ill. App. 3d 899, 907, 668 N.E.2d 1144, 1149 (1996).

■ We first consider whether the trial court was correct in dismissing all counts of the complaint on the basis of *res judicata*. Under the doctrine of *res judicata*, a final adjudication on the merits by a court of competent jurisdiction absolutely bars a subsequent action involving the same parties or their privies and the same claim, demand or cause of action. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490, 626 N.E.2d 225, 228 (1993). The doctrine bars litigation of all issues that were actually decided and all issues that could have been raised and determined because they were properly involved by the subject matter of the earlier action. *City of Rolling Meadows v. National Advertising Co.*, 228 Ill. App. 3d 737, 743, 593 N.E.2d 551, 556 (1991). The defendant bears the burden of pleading and establishing the elements of *res judicata*. *American National Bank & Trust Co. v. Village of Libertyville*, 269 Ill. App. 3d 400, 404, 645 N.E.2d 1013, 1016 (1995).

The first element of *res judicata* is present here because the trial court's dismissal with prejudice of the 1990 action constituted an adjudication of that action on its merits. See 134 Ill. 2d R. 273; *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 647, 545 N.E.2d 481, 486 (1989).

■ We must next determine whether the 1990 cause of action is the same as the instant one. Illinois courts have used two tests to determine whether causes of action are the same for *res judicata* purposes. *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 312, 597 N.E.2d 616, 621 (1992). Under the "same evidence" test, *res judicata* applies if the same facts are essential to maintain both actions or if the evidence needed to sustain the second suit would have sustained the first suit. *Rodgers*, 149 Ill. 2d at 312. Under the "transactional" test, the court must determine whether the two actions arise from the same transaction, incident or factual situation. *Rodgers*, 149 Ill. 2d at 312. Causes of action that assert different theories of recovery may be considered the same for *res judicata* purposes if the same operative facts give rise to the assertions. *Torcasso*, 157 Ill. 2d at 491.

The plaintiff and the intervenors seek to characterize the instant action as an attack on the Royal Ridge planned unit development. They argue that *res judicata* does not apply because the action could not have been brought until 1996, when the special use permit for the Royal Ridge development was approved. However, a thorough examination of the plaintiff's complaint reveals that the instant action is an attack on the annexation, zoning and residential development

of the Royal Ridge parcel in general rather than an attack on the specific development approved by the special use permit.

The invalidity of zoning classification claim, which is part of count II, attacks the R-8 multifamily residential zoning of the property, which was determined by the 1988 annexation agreement and the 1989 ordinance. The complaint does not allege that the underlying zoning has become more inappropriate or unreasonable since the issuance of the special use permit approving the Royal Ridge development. Therefore, the attack on the zoning classification, which has not changed since the property's annexation, could have been made in 1990.

In count II of its complaint, the plaintiff also sought an order declaring the special use permit void because the Royal Ridge development did not meet the requirements set forth by section 11—602 of the Village's zoning code for the issuance of a permit. The complaint alleged that the Royal Ridge development would not be adequately served by essential public facilities, such as schools, and that it would cause undue traffic congestion.

While the special use permit was not issued until 1996, we do not believe that prevents the application of *res judicata* to bar this claim. The special use permit claim attacks the development of the property on the basis that the development will increase traffic and student population. This is the same basis on which the complaint attacks the Royal Ridge parcel's R-8 multifamily residential zoning classification. The complaint does not allege that the 151-unit planned development will be more detrimental than development under the traditional R-8 multifamily residential zoning. In fact, the minimum lot size requirements for single-family homes on R-8 zoned property, as set forth in section 4—110 of the Northbrook zoning code, would permit more than 151 single-family homes to be built on the 47.95-acre Royal Ridge parcel without the issuance of a special use permit. Although the special use permit claim asserts a different theory of recovery, admittedly one that did not exist in 1990, it is merely another attack on the residential zoning and development of the property without requiring school district contributions. The annexation agreement, ordinance and resolution establishing the zoning and the exemption from school district contributions all existed in 1990 and could have been attacked at that time.

The equal protection claim in count I is based on the annexation agreement provision limiting school district contributions. The plaintiff argues that this claim arose in 1996 when the Village approved the special use permit without requiring contributions to school districts. But the provision exempting the defendants from

certain school district contributions is contained in the 1988 annexation agreement and the 1989 resolution. Therefore, the claim could have been brought in 1990. Count IV alleges that the annexation agreement was invalid to the extent that it limited contributions to school districts. Count V seeks monetary damages for the violation of the subdivision ordinance's provision regarding school district contributions. Each of those claims also could have been raised in the 1990 litigation.

■ We conclude that all claims are barred under either the transactional or the same evidence test. The claims in both lawsuits revolve around the same transaction, incident, or factual situation, the annexation and zoning of the Techny parcel as governed by the annexation agreement and ordinances. Also, as the defendants note, the plaintiff alleged the same harm, an increase in traffic and in student population, and sought the same relief, to prevent development or receive monetary compensation for damages resulting from the development, in both actions. The fact that the plaintiff has asserted different theories in attacking the annexation and zoning does not prevent the application of *res judicata*. *Zabel v. Cohn*, 283 Ill. App. 3d 1043, 1049, 670 N.E.2d 877, 881 (1996); *Horton v. Caterpillar, Inc.*, 260 Ill. App. 3d 150, 153, 632 N.E.2d 1061, 1063 (1994).

We reach the same conclusion under the same evidence test as well. In order to maintain both suits, the plaintiff would need to present evidence of the terms of the annexation agreement, ordinances and resolution annexing and zoning the property and evidence that development of the property would result in increased traffic and student population. The first action would also require evidence of the terms of and parties to the Techny Agreement, while the second action would require evidence of the Village's subdivision ordinance. We do not believe this bars the application of *res judicata*. In *Relander v. Phoenix Mutual Life Insurance Co.*, 262 Ill. App. 3d 525, 530, 636 N.E.2d 944, 948 (1994), the court found that *res judicata* barred the plaintiff from asserting a claim based on *quantum meruit* where a previous claim based upon breach of contract had been dismissed. In that case, as here, the earlier cause of action would have required proof of the terms of and parties to the contract, while the latter would not. But see *City of Rolling Meadows*, 228 Ill. App. 3d at 744; *Regan v. Ivanelli*, 246 Ill. App. 3d 798, 807-08, 617 N.E.2d 808, 816-17 (1993). Additionally, the instant action would require evidence that the ordinance requiring school district contributions had not been equally enforced with regard to all school districts. Because the plaintiff could have raised this claim in the first action, we do not believe this difference in the evidence required to maintain the two actions bars the application of *res judicata*.

We reject the contention, made by the plaintiff and the intervenors, that a change in the relevant factual situation since the 1990 action precludes application of the doctrine of *res judicata*. The plaintiff and the intervenors refer to new tax cap legislation enacted in 1995 and the fact that a parcel of land bordering one side of the Royal Ridge parcel was under contract to be used as a maintenance facility.

A second action should be barred by *res judicata* only when the facts and conditions remain the same as they were at the time the court entered the first judgment. *Best Coin-Op, Inc.*, 189 Ill. App. 3d at 650. The tax legislation was enacted after the 1990 action was dismissed, but, while it could arguably affect the amount of the plaintiff's damages, it would not affect the plaintiff's right to relief under any of its claims. While a change in contiguous land uses could arguably bar the application of *res judicata* to an attack on zoning, the plaintiff's complaint does not assert that the proposed maintenance facility is different from the type of use to which the property in question was being put in 1990. Rather, the complaint states that the property on which the facility was to be located was zoned for R-8 multifamily residential use and was currently being used as a garage and storage facility.

The intervenors contend that *res judicata* does not bar the instant action because neither they nor defendants RKZ and Romanek Properties were parties to the 1990 action. The intervenors do not argue that the inclusion of the Trustee in the instant action bars the application of *res judicata*, apparently conceding that party's privity with the Society, the beneficial owner of the property. Therefore, we need only consider whether RKZ and Romanek Properties are in privity with the Society and whether the intervenors are in privity with the plaintiff.

For purposes of *res judicata*, privity exists "between parties who adequately represent the same legal interests." *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916, 678 N.E.2d 308, 311 (1997). In *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 544, 546, 611 N.E.2d 1321, 1323 (1993), 12 governmental bodies and public interest groups appealed and obtained a reversal of the defendant's decision granting Commonwealth Edison Company (Edison) a rate increase. The trial court dismissed a subsequent class action suit brought by a taxpayer citizen seeking to require Edison to apply for refunds of taxes paid on the rate increase. *Illinois Commerce Comm'n*, 243 Ill. App. 3d at 548-49. This court affirmed the dismissal on the basis of *res judicata*, finding that the taxpayer citizen's interests had been adequately represented by governmental

and consumer groups who brought the first action on behalf of the people. *Illinois Commerce Comm'n*, 243 Ill. App. 3d at 550-51.

Similarly, the intervenors' interests in the instant case, the quality of education at the plaintiff's schools, traffic congestion in the community and the safety of their children while traveling to and from school, were adequately represented by the plaintiff in the earlier litigation.

Additionally, for purposes of *res judicata*, privity exists between parties who share a mutual or successive relationship in property rights which were the subject of an earlier action. *Fried v. Polk Brothers, Inc.*, 190 Ill. App. 3d 871, 879, 546 N.E.2d 1160, 1165 (1989). Therefore, we find that privity exists between the Society, the beneficial owner of the property, and defendants RKZ, the lessee of the property, and Romanek Properties, the managing partner for the Royal Ridge development.

We affirm the dismissal of all claims on the basis of *res judicata*.

Affirmed.

HOURIHANE and THEIS, JJ., concur.