FIFTH DIVISION
April 15, 2011

No. 1-10-1599

| | | |
|---|---|---|
| AGOLF, LLC, an Illinois Limited Liability Company, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CH 18560 |
| | ) | |
| THE VILLAGE OF ARLINGTON HEIGHTS, | ) | |
| a Municipal Corporation, | ) | The Honorable |
| | ) | Nancy J. Arnold, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices Joseph Gordon and Howse concurred in the judgment and opinion.

## OPINION

Plaintiff-appellant Agolf, LLC, an Illinois limited liability company (plaintiff), brought suit against defendant-appellee the Village of Arlington Heights, a municipal corporation (defendant), seeking declaratory judgment and injunctive relief involving a redevelopment project. It later filed an amended complaint which added constitutional claims. Defendant moved for summary judgment based on *res judicata*, and the trial court granted its motion. Plaintiff appeals, contending that the trial court erred in granting summary judgment on the ground of *res judicata* because that doctrine was inapplicable and inequitable in the instant cause. Plaintiff asks that we

reverse the trial court's grant of summary judgment in whole or, alternatively, that we reverse it at least as to the constitutional claims it asserted in its amended complaint, and that we remand the cause for further consideration on the merits. For the following reasons, we affirm.

BACKGROUND

Defendant implements a TIF district.

Plaintiff purchased International Plaza (the Plaza) shopping center in 1995, near the intersection of Arlington Heights Road and Golf Road in Arlington Heights, Illinois. Surrounding the Plaza were several commercial lots, single-family homes, businesses, residential lots, and a gas station; some of these were occupied while others had been abandoned. Also, southwest of the Plaza sat a small shopping center operated by Arlin-Golf, LLC (Arlin-Golf). Over the years, plaintiff negotiated multiple leases with several tenants for the occupation of space in its Plaza, among them Capital Fitness of Arlington Heights, Inc. (Capital Fitness), which operated a health club. Capital Fitness's lease with plaintiff at the Plaza was for 11 years commencing in 1997, with options to renew until August 2016.

In January 2002, defendant announced that it would be implementing a tax increment financing (TIF) district as part of a redevelopment project. The plan for this project targeted the redevelopment of a substantial area around Arlington Heights Road and Golf Road and included the property on which the Plaza sat, as well as the property to the southwest owned by Arlin-Golf. Defendant designated and implemented the TIF district via ordinance on July 1, 2002.

Capital Fitness brings suit.

Immediately thereafter, in July 2002, Capital Fitness filed a two-count cause of action

against defendant, seeking an injunction and declaratory judgment. See *Capital Fitness of Arlington Heights, Inc. v. Village of Arlington Heights*, 394 Ill. App. 3d 913, 917 (2009). It requested an order prohibiting defendant from using its powers to condemn the property under the Tax Increment Allocation Redevelopment Act (Act) (65 ILCS 5/11-74.4-1 *et seq.* (West 2002)), a declaration that the designation of the redevelopment project area was invalid, a declaration that the Plaza should not be included in the project, and damages. Following the filing of a first amended complaint, the trial court entered an order dismissing count I of Capital Fitness's complaint (for injunctive relief), but allowed count II (for declaratory judgment) to proceed. Capital Fitness eventually filed a second amended complaint, alleging that the redevelopment project area did not meet the requirements for the implementation of a TIF plan, that defendant failed to demonstrate that the project area was not subject to growth, and that defendant's plan was improper. See *Capital Fitness*, 394 Ill. App. 3d at 918.

The cause proceeded to trial in 2006, during which some 14 witnesses testified regarding the project, its planning, and the land in question. See *Capital Fitness*, 394 Ill. App. 3d at 918. Among those who testified on behalf of Capital Fitness in its suit against defendant was Su-Chuan Hsu, plaintiff's president and manager of the Plaza. She testified regarding the financial condition of the Plaza, including its revenues, occupancies, rents, property tax increases, and the equalized assessed value of the land. She averred that she, and a representative that she had hired, attended several public meetings concerning defendant's TIF plan and ordinance, including a village board meeting in early March 2002, a joint review board meeting in late March 2002, and a redevelopment commission meeting in April 2002. Hsu stated that her representative, with her

authority, spoke at these meetings against the TIF district. She further testified that in May 2002, she hired a lawyer and that the two of them, along with his partner, attended a village board meeting in June 2002 during which they made statements regarding, again, the financial condition of the Plaza and their opposition to defendant's plan. Finally, Hsu testified that plaintiff had recently filed suit against defendant over the TIF district and that plaintiff's suit, just as Capital Fitness's suit against defendant, sought to declare the TIF district invalid.

After a lengthy examination of Capital Fitness's allegations, the Act's statutory factors and the evidence presented, the trial court, in January 2007, found that Capital Fitness had not met its burden in its cause, that defendant had not abused its discretion in designating the Plaza as part of its redevelopment plan, and that defendant's project complied with all necessary requirements. Therefore, the trial court denied Capital Fitness's request for declaratory judgment, holding that the TIF ordinance implemented by defendant was proper. See *Capital Fitness*, 394 Ill. App. 3d at 918.

Capital Fitness appealed its cause to our court. In a decision issued in September 2009, we affirmed the trial court. See *Capital Fitness*, 394 Ill. App. 3d at 935. Again, after reviewing the Act, its factors and the pertinent evidence regarding the land involved, we found that Capital Fitness had failed to establish that defendant had abused its discretion in any way. Specifically, we addressed the land on which the Plaza sat in relation to statutory blighting factors relevant to improved areas, including obsolescense, deterioration, excessive vacancies, inadequate utilities, deleterious land use or layout, and lack of community planning; statutory blighting factors relevant to vacant areas; and conformance with defendant's project plan. See *Capital Fitness*,

No. 1-10-1599

394 Ill. App. 3d at 920-35. Following this examination, we held that the trial court's decision denying Capital Fitness' request for declaratory judgment, and instead holding for defendant, was not against the manifest weight of the evidence. See *Capital Fitness*, 394 Ill. App. 3d at 921-22.

Capital Fitness sought review of our decision in the Illinois Supreme Court, which denied its appeal. See *Capital Fitness Arlington Heights, Inc. v. Village of Arlington Heights*, 234 Ill. 2d 518 (2009).

Arlin-Golf also files suit.

Meanwhile, in 2006, while Capital Fitness' cause against defendant was pending, Arlin-Golf, owner of the shopping center southwest of plaintiff's Plaza, also filed suit against defendant in Illinois state court. See *Arlin-Golf, LLC v. The Village of Arlington Heights*, 631 F.3d 818 (7th Cir. 2011). As Capital Fitness' suit, Arlin-Golf's suit, too, alleged that defendant's implementation of the TIF district was improper under the Act. It also claimed that defendant had violated the Illinois constitution by committing an improper taking. In September 2008, Arlin-Golf voluntarily dismissed its suit with prejudice. However, in 2009, Arlin-Golf sued defendant in federal court via a 10-count complaint, alleging that defendant's conduct caused Arlin-Golf to suffer financial losses. Defendant filed a motion to dismiss based on *res judicata* in relation to Arlin-Golf's prior state suit, and the district court granted its motion. Arlin-Golf appealed. See *Arlin-Golf*, 631 F.3d at 819-20.

Following a thorough review of the doctrine of *res judicata*, the *Arlin-Golf* court affirmed the judgment of the district court in favor of defendant. See *Arlin-Golf*, 631 F.3d at 821-22. Specifically, applying Illinois law, it concluded that Arlin-Golf's federal suit was barred by its

5

prior state suit because, not only were the same parties and their privies involved, but also both causes relied on the same operative facts–defendant's implementation of the TIF district. See *Arlin-Golf*, 631 F.3d at 821-22.[1]

Plaintiff files suit against defendant.

Meanwhile, amidst the pendency of all this litigation, plaintiff brought suit against defendant in September 2006. In its two-count complaint, plaintiff sought an injunction to prevent defendant from implementing the TIF district and its project, and a declaratory judgment that defendant's plan violated the Act. Plaintiff alleged that certain requisites set out in the Act were not present within the land which would render a TIF district proper, *i.e.*, obsolescense, excessive vacancies, deleterious land use or layout, lack of community planning, deterioration, and inadequate utilities. Plaintiff also alleged that the requisites for "blight" under the Act were

---

[1]We note for the record that during the pendency of the instant appeal, defendant filed a motion to cite *Arlin-Golf* as additional authority in support of its arguments herein regarding *res judicata*. Plaintiff, meanwhile, filed a response stating that *Arlin-Golf* did not provide such support because it did not deal with the element of *res judicata* at issue: privity. Upon consideration of plaintiff's response, we granted defendant's motion. Plaintiff is correct that the main issue in *Arlin-Golf* was not privity (because the plaintiff in the state and federal cases was the same, *i.e.*, Arlin-Golf) but, rather, whether there was an identity between the causes of action (*i.e.*, between Arlin-Golf's state claim against defendant and its federal claim against defendant). However, because the facts in *Arlin-Golf* are so closely related to the facts in the instant cause, we find that the references we have made to it herein are appropriate.

not present, that application of the Act to the land in question was improper, and that defendant's plan did not conform to its overall comprehensive plan for the area. In November 2007, plaintiff filed an amended complaint. To its original two counts, plaintiff added two constitutional claims, namely, that the Act was unconstitutionally vague on its face and that the Act was unconstitutional as it was applied in this cause.

Due to the pendency of Capital Fitness's litigation against defendant, a stay was ordered in plaintiff's case. However, following the resolution of Capital Fitness's cause which declared defendant's TIF district valid, defendant filed a motion in the trial court for summary judgment against plaintiff in the instant cause based on *res judicata*. In its motion, defendant asserted that plaintiff's amended complaint presented the same allegations as Capital Fitness's second amended complaint in its suit against defendant, which had challenged the designation of the TIF project area and defendant's failure to meet the statutory requirements of the Act. Defendant attached to its motion a copy of plaintiff's and Capital Fitness's complaints and argued that both were identical in their factual and legal assertions against defendant.

In May 2010, in a written memorandum following hearings on the matter, the trial court granted summary judgment in favor of defendant and against plaintiff. Regarding plaintiff's original two counts for injunctive relief and declaratory judgment, the court determined that plaintiff and defendant agreed that a final judgment on the merits of these issues existed in *Capital Fitness*, and that the causes of action in *Capital Fitness* and in the instant cause were identical. Therefore, the court noted that the only question was whether there was an identity of parties or their privies in these two suits; while defendant had argued that there was, plaintiff had argued

that there was not because it was the landlord of the Plaza while Capital Fitness was merely a tenant which did not share the same interest in the land. Citing *Board of Education of Sunset Ridge School District No. 29 v. Village of Northbrook*, 295 Ill. App. 3d 909 (1998), the trial court disagreed with plaintiff, finding that because both it and Capital Fitness had an interest in resisting the TIF project as unwarranted, "[t]heir legal interest in the controversy is identical." The court concluded that, due to its privity with Capital Fitness, plaintiff's requests for injunctive relief and declaratory judgment were barred by *res judicata*.

Then, the court turned to the two constitutional counts, which plaintiff had added in its amended complaint. At trial, the following exchange took place:

"THE COURT: *** You make no argument today about your added counts on Count I and II, which [are] your late added counts, which seek[ ] to challenge the constitutionality of the TIF statute on its whole. You agree with counsel that the [Illinois] Supreme Court has already ruled on it?

[Plaintiff's Counsel]: I think that the issue in – I don't concede that.

THE COURT: You don't.

[Plaintiff's Counsel]: The issue under *res judicata* is whether it is – under the transactional test, whether it is an identical issue, and the constitutionality is a different issue. ***

THE COURT: Well, I read your count[s], and [they are] based *** exactly on the allegation *** that the statute is vague ***.

[Plaintiff's Counsel]: Right. In other -- I mean, the theory of the cause of

8

action in which to challenge the TIF arises from the same operative facts, if that's the point that the Court is making. But, I mean, you could plead a different legal theory based upon certain facts. But it is – It is based –

THE COURT: Counsel raised in his motion for summary judgment that your constitutional claims are barred already by the – or have no merit because of the Supreme Court ruling that has already upheld the TIF statute [in *People ex rel. City of Canton v. Crouch*, 79 Ill. 2d 356 (1980)].

[Plaintiff's Counsel]: I understand.

THE COURT: So you're conceding that?

[Plaintiff's Counsel]: I am conceding that that case has been decided by the Illinois Supreme Court and it is good law."

No other mention was made at the hearings regarding plaintiff's constitutionality counts. In its written memorandum, the trial court found that plaintiff had "conceded" during trial, via the exchange cited, that the constitutionality of the Act, both facially and as applied, had already been decided by *Crouch*, and, thus, it did not need to address those issues therein. Accordingly, the trial court entered summary judgment in favor of defendant and against plaintiff on all counts of plaintiff's amended complaint.

ANALYSIS

On appeal, plaintiff primarily contends that the trial court erred in determining that *res judicata* applied in the instant cause to bar the counts in its original complaint for injunctive relief and declaratory judgment against defendant. In addition, plaintiff makes the alternative

9

contention that, even if *res judicata* did apply to bar those counts, the trial court erred in dismissing its two amended counts regarding the constitutionality of the Act based on an alleged concession plaintiff made at trial.

We begin by setting forth the applicable standard of review. As noted, the trial court entered summary judgment in favor of defendant upon its motion, and against plaintiff, on all counts of plaintiff's amended complaint. Accordingly, this included both plaintiff's original counts for injunctive relief and declaratory judgment, and its added counts asserting constitutional (facial and as-applied) vagueness of the Act. Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001); accord *Purtill v. Hess*, 111 Ill. 2d 229, 240-44 (1986); *Zakoff v. Chicago Transit Authority*, 336 Ill. App. 3d 415, 420 (2002). While this relief has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris*, 197 Ill. 2d at 35 (quoting *Purtill*, 111 Ill. 2d at 240). Appellate review of a trial court's grant of summary judgment is *de novo* (see *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370 (2007); accord *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992); *Zakoff*, 336 Ill. App. 3d at 420), and reversal will occur only if we find that a genuine issue of material fact exists (see *Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988)). In addition, applicable to the instant cause, we note that the issue of whether a claim is barred by *res judicata* comprises a question of law, which also mandates *de*

*novo* review by our court. See *Matejczyk v. City of Chicago*, 397 Ill. App. 3d 1, 7 (2009).

Turning first to the original counts of its complaint against defendant, plaintiff contends that the trial court erred in applying *res judicata* to bar these based on the holding reached in *Capital Fitness*. Plaintiff argues that *res judicata* was not applicable in the instant cause because the element of privity did not exist between plaintiff in this suit against defendant and Capital Fitness in its suit against defendant. Essentially, plaintiff asserts that, as the landlord of the Plaza, its interests with respect to defendant's TIF project were in no way identical or even similar to Capital Fitness's interests as a mere tenant, and, thus, its distinct suit should have been allowed to proceed. We disagree.

The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies to a lawsuit and, thus, acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand or cause of action. See *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001); *Green v. Northwest Community Hospital*, 401 Ill. App. 3d 152, 154 (2010) (this equitable doctrine was intended to prevent multiple lawsuits between the same parties where the facts and issues presented are the same); accord *Leow v. A&B Freight Line, Inc.*, 175 Ill. 2d 176, 180 (1997) (adjudication on merits bars subsequent actions raising same claims or demands and involving same parties or privies). *Res judicata* applies when all three of its elements exist, namely: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak*, 197 Ill. 2d at 390; accord *Matejczyk*, 397 Ill. App. 3d at 3;

11

*Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 722 (2004). Once *res judicata* is established, its bar extends to all matters that were offered to sustain or defeat the claim or demand, as well as to any and all other matters which may have or could have been offered for that purpose. See *Nowak*, 197 Ill. 2d at 389; *Matejczyk*, 397 Ill. App. 3d at 3 (bar applies to what was actually decided and what could have been decided); accord *Purmal*, 354 Ill. App. 3d at 722. Accordingly, while it is true that every plaintiff is entitled to his day in court and *res judicata* should not be applied to create fundamental unfairness (see, *e.g.*, *Nowak*, 197 Ill. 2d at 390), the critical nature of this doctrine operates to prevent repetitive lawsuits and protects parties from being forced to bear the burden of relitigating essentially the same claim over and over (see *Matejczyk*, 397 Ill. App. 3d at 9).

The parties agree that the first two elements of *res judicata* exist between Capital Fitness's suit against defendant and plaintiff's suit against defendant. That is, plaintiff here does not assert that there was not a final judgment on the merits rendered by a court of competent jurisdiction or that there is not an identity of the causes of action. Indeed, Capital Fitness's case resulted in a final judgment on the merits. Capital Fitness filed suit in July 2002, the same month in which defendant implemented the TIF district via ordinance. The cause proceeded to trial in 2006, over a dozen witnesses testified (including plaintiff's president), and the trial court held that defendant's TIF ordinance was proper. See *Capital Fitness*, 394 Ill. App. 3d at 917-18. Capital Fitness then appealed, our court affirmed the trial court's decision (see *Capital Fitness*, 394 Ill. App. 3d at 935), and our supreme court denied any further review (234 Ill. 2d 518).

Moreover, an identity of cause of action is clearly apparent. Separate claims are

considered the same cause of action under *res judicata* if they arise from a single group of operative facts. See *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 314 (1998) (this test, known as the transactional test, applies regardless of whether different legal theories are asserted); accord *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 332 (2009) (as long as the claims arise from the same transaction, this element of *res judicata* is met even if there is not a substantial overlap of evidence in the cases). Both Capital Fitness's suit against defendant and plaintiff's suit against defendant challenged defendant's enactment of the TIF district and its redevelopment project in relation to the Plaza. Interestingly, Capital Fitness and plaintiff presented identical allegations in their complaints; not only were they both seeking injunctions and the same declaratory relief (*i.e.*, a declaration that the project and district were invalid), but both also alleged that defendant violated the same statutory factors regarding blighting and nonconformance with the project plan. A comparison of these complaints, as found in the record, supports this conclusion. These lawsuits, then, clearly arose from the same single group of operative facts and, thus, there is an identity between Capital Fitness and plaintiff's causes of action against defendant.

The element of *res judicata* that plaintiff insists on appeal is lacking, and therefore renders the doctrine inapplicable, is an identity of parties or their privies. Again, plaintiff asserts that, because it was the landlord of the Plaza and because Capital Fitness was only a tenant of the Plaza, their interests in the TIF litigation against defendant were not the same.

In order to be bound by a prior judgment in an action where it was not a party, the party in the subsequent lawsuit must have been in privity with one of the parties in the prior lawsuit. See *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 972 (1998). Privity does not require that

all the same parties are involved; rather, instead of the identity of the parties, this element focuses on the interests of the parties in question. See *Purmal*, 354 Ill. App. 3d at 722-23. A determination regarding whether privity exists is to be conducted on a case-by-case basis. See *In re Liquidation of Legion Indemnity Corp.*, 373 Ill. App. 3d 969, 977 (2007); see also *Purmal*, 354 Ill. App. 3d at 722 (there is no general or automatic definition of "privity" and, instead, each case's circumstances must be evaluated).

"Privity expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." (Internal quotation marks omitted.) *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010) (quoting *Purmal*, 354 Ill. App. 3d at 722-23, quoting Restatement of Judgments §83, cmt. a (1942)). Simply put, privity exists between a party to the prior suit and a nonparty when the party to the prior suit "adequately represent[ed] the same legal interests" of the nonparty. (Internal quotation marks omitted.) *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992). And, more specific to the instant cause, privity clearly exists between parties who share a mutual or successive relationship in property rights that were the subject of an earlier action. See *Board of Education of Sunset Ridge School District No. 29 v. Village of Northbrook*, 295 Ill. App. 3d 909, 919 (1998); see also *St. John's*, 404 Ill. App. 3d at 513. Ultimately, a nonparty to a prior suit may be bound pursuant to privity if its interests "are so closely aligned to those of a party" in that prior suit that the party was, essentially, a virtual representative of the nonparty. *Purmal*, 354 Ill. App. 3d at 723; accord *St.*

*John's*, 404 Ill. App. 3d at 513; see also *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556, 563 (2005).

Upon our examination of the facts at hand, we find that there was privity between Capital Fitness, the party in the prior suit, and plaintiff, the nonparty. First, Capital Fitness and plaintiff shared the same legal interest in their respective lawsuits against defendant. Capital Fitness sought injunctive relief and a declaratory judgment to prevent defendant from incorporating the Plaza in its TIF district and redevelopment plan. This was the exact same relief plaintiff sought in its suit against defendant. Next, it is clear to us that Capital Fitness adequately represented this shared legal interest. As we noted earlier, Capital Fitness brought suit against defendant immediately after defendant enacted the ordinance establishing the TIF district in July 2002. During four years of lengthy litigation, Capital Fitness pursued its cause to trial, wherein some 14 witnesses testified. Capital Fitness then brought its case to our court, as well as our state supreme court, thereby exhausting its judicial options–all in an effort to save plaintiff's Plaza.

What is more, it cannot be ignored that plaintiff undoubtedly knew about Capital Fitness's litigation from its inception and knew the contents of its legal assertions against defendant. Plaintiff's president and manager, Hsu, testified at Capital Fitness's trial against defendant. In addition to her testimony regarding the financial condition of the Plaza, she recounted the multiple representatives and attorneys she hired in an effort to defeat the TIF district and defendant's redevelopment plan, and the several public meetings she attended to voice plaintiff's objections. Hsu admitted that plaintiff had recently filed suit against defendant over the TIF district, and that plaintiff's suit, just as Capital Fitness's suit against defendant, sought to declare the TIF district

15

invalid. And, a stay of plaintiff's suit was issued precisely to await the outcome of Capital Fitness's suit. From all this, it is clear to us that, not only did Capital Fitness and plaintiff share the same legal interest regarding the Plaza and its fate under defendant's TIF redevelopment project, but Capital Fitness also adequately represented that shared interest in its suit against defendant.

Plaintiff hinges its argument on the fact that Capital Fitness was merely a tenant of the Plaza and, thus, had a differing interest in the litigation from plaintiff, the owner of the Plaza. Plaintiff, challenging the trial court's reliance on *Sunset Ridge* as the basis of its privity finding, goes so far as to assert that, as a lessee who had only a finite interest in the Plaza, Capital Fitness "could potentially benefit from the Plaza being designated" as part of defendant's TIF district because it could use this fact as "leverage" for lower rent or early lease termination, walk away without any loss of property, and perhaps end up in the same location in a newer, larger shopping center. While this may initially have been a hypothesis at the inception of the TIF districting plan, Capital Fitness itself has made clear, though all its efforts during its seven-year court battle, that this is nothing more than conjecture and speculation. Had Capital Fitness even remotely considered that defendant's TIF ordinance would benefit it in some way (giving it some sort of leverage or better business opportunity), it is entirely unbelievable that it would have brought a suit against defendant and pursued it as it did, all the way to our state supreme court. While Capital Fitness may have been a tenant and not the owner of the Plaza, it had signed its lease in 1997, was to stay there for 11 years, and had options to renew until 2016–amounting to nearly 20 years at that location. Undoubtedly, plaintiff's interest was to fight against the "permanent" loss

of property it owned. However, the facts here indicate that Capital Fitness, too, was fighting for an interest so similar that it can be said to have been so closely aligned to plaintiff's so as to be in privity.

Moreover, plaintiff's claim that the trial court's reliance on *Sunset Ridge* was inappropriate because parts of that decision were "*dicta*" is unfounded. To the contrary, we find, as did the trial court, that *Sunset Ridge* is quite applicable to the instant cause. In that case, the plaintiff board of education brought suit against, among others, a village and the owner of the beneficial interest in a certain parcel of property. This suit attacked an ordinance enacted by the village that the plaintiff alleged was adopted in breach of, and in conflict with, a prior annexation agreement involving the property. In its suit, the plaintiff complained that development of the property would increase traffic and adversely harm the surrounding educational environment. Eventually, the plaintiff's suit was dismissed on its merits in favor of the defendants and the plaintiff did not appeal. Six years later, as the village moved ahead with plans to develop the property, the plaintiff brought suit again. By this time, however, the owner of the beneficial interest had turned over its interest in the land to others; accordingly, the plaintiff sued not only the village again, but now also the lessee, the land trustee and a developer. In addition, residents of the school district with children attending the plaintiff's schools were allowed to intervene on behalf of the plaintiff. In this second suit, the plaintiff and its intervenors complained that the development of the land would harm the educational environment, again citing traffic hazards and concerns over the quality of education. When the defendants sought dismissal of this second cause on the basis of *res judicata*, the plaintiff insisted, in part, that privity could not exist since

multiple new parties with different interests in the land (the lessee, trustee and developer) were now involved. See *Sunset Ridge*, 295 Ill. App. 3d at 910-15.

The *Sunset Ridge* court agreed with the defendants and declared that the second suit was barred by the first suit under *res judicata*. After finding that there had been a final judgment on the merits rendered by a court of competent jurisdiction and an identity of the causes of action, the *Sunset Ridge* court turned to an examination of the element of privity and chose to do so regarding both sides in the suit: the plaintiffs and the defendants. See *Sunset Ridge*, 295 Ill. App. 3d at 915-18. First, regarding the plaintiffs, it noted, as we have, that privity exists between parties who adequately represent the same legal interests. See *Sunset Ridge*, 295 Ill. App. 3d at 918. Reviewing the facts of the cause, the *Sunset Ridge* court concluded that the plaintiff in the prior suit and the intervenors in the subsequent suit shared the same legal interest: both had cited the quality of education and traffic congestion as the crux of their complaints. See *Sunset Ridge*, 295 Ill. App. 3d at 918-19. Therefore, privity existed between them, since the plaintiff in the first suit had adequately represented this interest. See *Sunset Ridge*, 295 Ill. App. 3d at 919. Then, regarding the defendants, the *Sunset Ridge* court noted, again as we have, that "privity exists between parties who share a mutual or successive relationship in property rights which were the subject of a prior action." *Sunset Ridge*, 295 Ill. App. 3d at 919. Accordingly, because the lessee, trustee and developer shared such a successive relationship in the property rights of the land at issue with the original owner who was a defendant in the prior suit, the *Sunset Ridge* court determined that there was privity among the defendants as well. See *Sunset Ridge*, 295 Ill. App. 3d at 919.

18

Similar to the defendants in *Sunset Ridge*, Plaza tenant Capital Fitness shared a mutual relationship in property rights with plaintiff, the Plaza landlord. And, as we have already discussed at length, these mutual property rights were the subject of a prior action–Capital Fitness's suit against defendant regarding the Plaza property, and the propriety of the TIF district and of its inclusion of the Plaza therein. This mutual relationship in property rights which Capital Fitness and plaintiff share, then, clearly demonstrates a legal interest that is so closely aligned that it amounts to privity between them. Ultimately, having been adequately represented in Capital Fitness's prior suit, this privity results in the operation of *res judicata* to now bar plaintiff's instant (subsequent) suit. See, *e.g.*, *Sunset Ridge*, 295 Ill. App. 3d at 918-19; *Furgatch v. Butler*, 188 Ill. App. 3d 1060, 1066-67 (1988) (*res judicata* barred property owner's suit against the defendant since the lessee had already filed suit against the defendant challenging the same city ordinance; privity of parties existed because property owner and lessee shared a mutual relationship to the same property rights considered in the prior litigation); see also *St John's*, 404 Ill. App. 3d at 514-15 (privity existed between church and its parishioner in prior suit on the one hand, and intervenors in subsequent suit on the other, as all shared mutual relationship in property rights in the graves of ancestors buried in cemetery).

We now turn to plaintiff's alternative argument on appeal. Plaintiff claims that, if we were to conclude, as we have, that *res judicata* operates to bar its original counts for injunctive relief and declaratory judgment against defendant, it does not apply to the two constitutional counts it added to its complaint because these rendered its cause of action different from Capital Fitness's cause of action against defendant. Plaintiff claims that the trial court mistakenly assumed that it

19

added these counts after defendant filed its motion for summary judgment, and that the court mistakenly believed plaintiff conceded at the hearings that the constitutional issues it raised were barred by *Crouch*. While we agree with plaintiff that the trial court was mistaken, we do not agree that its constitutional counts survive the application of *res judicata*.

At the outset, we note that plaintiff is correct regarding its assertions of the trial court's mistakes. For example, the trial court, during the hearings and in its written order, repeatedly referred to plaintiff's constitutional counts as "late" and "recently added." It also stated, in what seems to be an attempt at a reprimand, that plaintiff amended its complaint to add these counts after defendant had moved for summary judgment. Indeed, defendant, too, asserted before the trial court that this was the timeline regarding the filings in this cause, and continues to assert on appeal that this is what occurred. This, however, was not the case. The record makes clear that plaintiff amended its complaint to add the constitutional counts on November 1, 2007, while defendant did not file its motion for summary judgment until January 4, 2010. Clearly, then, any assertion by defendant and/or the trial court that plaintiff waited to amend, and any interpretation drawn from that assertion, was mistaken.

Moreover, from our review of the record, we cannot say, without a doubt, that plaintiff "conceded" the constitutional issues it raised. Rather, in our view, the exchange between plaintiff and the trial court in this regard did not end in any concession. As we noted early in this decision, the trial court pointed out to plaintiff that our state supreme court had already dealt with a challenge to the constitutionality of the TIF statute in *Crouch*, and asked plaintiff if it would concede this. Plaintiff specifically maintained that it did not concede this and continued to argue

that its constitutional claims should be heard. Plaintiff explained to the trial court that constitutionality was "a different issue" and that it was pleading "a different legal theory based upon certain facts." Following repeated attempts by plaintiff to further explain its stance and the trial court's repeated prompting to accept that *Crouch* already disposed of the constitutional issues, plaintiff finally stated that it was "conceding" that *Crouch* "has been decided by the Illinois Supreme Court and it is good law."

Having read the full exchange between plaintiff and the trial court, its context indicates to us that plaintiff, while "conceding" the existence of *Crouch* and its legal validity, was not at the same time conceding its constitutional issues. To the contrary, plaintiff continuously argued with the trial court that, despite *Crouch*, the fact that it asserted a different legal theory (*i.e.*, constitutionality of the TIF statute) other than its original counts for injunctive and declaratory relief rendered its cause of action different from Capital Fitness's cause of action and, thus, the trial court should not employ *res judicata* to bar these counts. This was, truly, the crux of plaintiff's argument: because the constitutional issues it raised against defendant had not been raised by Capital Fitness in its prior suit against defendant, there was no identity of cause of action–an element of *res judicata*. For the trial court to simply state that plaintiff "conceded" the constitutionality of the TIF statute, and thereby abandoned this major portion of its amended complaint, solely on the basis of the exchange that took place here was, we believe, based on the circumstances, a mistake.

However, while these mistakes may have occurred, they do not change the fact that *res judicata* operates to bar plaintiff's constitutional claims as well.

21

As we noted at the outset of this decision, the standard of review here is *de novo*. See *Rich*, 226 Ill. 2d at 370 (review of grant of summary judgment is *de novo*); *Matejczyk*, 397 Ill. App. 3d at 7 (whether claim is barred by *res judicata* is reviewed *de novo*). Accordingly, regardless of the thoughts and opinions expressed by the trial court below regarding what occurred during the proceedings, we may affirm this cause on any ground appearing in the record. See *Wilkerson v. Paul H. Schwendener, Inc.*, 379 Ill. App. 3d 491, 493 (2008); *Howard v. Firmand*, 378 Ill. App. 3d 147, 149 (2007).

As we mentioned in our discussion of *res judicata*, once its elements are established, its bar extends to all matters that were offered to sustain or defeat the claim or demand, as well as to any and all other matters which may have or could have been offered for that purpose. See *Nowak*, 197 Ill. 2d at 389; *Matejczyk*, 397 Ill. App. 3d at 3. This means, then, that *res judicata* prevents a nonparty from asserting not only claims that were actually decided in the original lawsuit, but also those claims that could have been decided in that prior lawsuit. See *Purmal*, 354 Ill. App. 3d at 722; *Furgatch*, 188 Ill. App. 3d at 1065. "*Res judicata* applies even if a different type of relief or damage is sought in the subsequent action as long as the same *** operative facts give[] rise to the successive assertions of relief." *Furgatch*, 188 Ill. App. 3d at 1065-66; accord *River Park*, 184 Ill. 2d at 314-15 (addition of new theories of relief in a subsequent suit does not save suit from *res judicata*, if these theories still arise from same operative facts involved in prior suit; they are, instead, considered to comprise one single cause of action).

Capital Fitness' cause against defendant was based on the same set of operative facts as plaintiff's cause against defendant–defendant's implementation of the TIF district under the Act

which, in turn, affected the existence of the Plaza in which Capital Fitness and plaintiff held mutual property rights. Capital Fitness and plaintiff even alleged the same facts and sought the same relief in their complaints and, as we have just concluded, were privies. The only difference in these suits was that plaintiff amended its complaint to add two counts challenging the constitutionality of the Act--all other material facts involved remained the same in these suits. Clearly, Capital Fitness could have raised these same constitutional claims in its prior suit against defendant. That it chose not to do so, for whatever reason, is irrelevant here. Because the exact same operative facts were involved in both suits and form the basis of plaintiff's additional theories of relief, these theories were part of one single cause of action against defendant and are, therefore, barred by *res judicata*. See *Furgatch*, 188 Ill. App. 3d at 1066-67 (because lessee could have raised constitutional issue regarding zoning ordinance and its effect on building in prior suit against the defendant, the plaintiff was barred by *res judicata* from raising it in his subsequent suit against the defendant which was based on same set of operative facts); see, *e.g.*, *River Park*, 184 Ill. 2d at 314-17 (although the plaintiff's claims in successive suit asserted different theory of recovery and sought different relief from prior suit, *res judicata* barred them because these different theories and relief still arose from single group of operative facts involved in both suits; therefore, they constituted one single cause of action). Accordingly, we find that plaintiff's alternative argument seeking remand of its constitutional claims to the trial court must fail.

As a final note, we recognize plaintiff's outcry at the end of its brief on appeal that the equities do not favor the application of *res judicata* in this case. It insists that defendant waited

some four years before taking action with respect to the Plaza, driving out plaintiff's tenants and devaluing its property. Plaintiff also cites the historical misuse of the Act and its right to have its day in court, claiming that *res judicata*'s application here "would essentially require every landlord property owner to spend money litigating an issue *** the moment one tenant elected to immediately file suit."

Having acknowledged these claims, however, we believe that the instant cause presents a prime example of the proper application of *res judicata*. As we have thoroughly discussed, each of its elements has been met: Capital Fitness brought a suit against defendant to final adjudication, that suit clearly involved an identity of the same cause of action as the suit plaintiff subsequently filed against defendant, and Capital Fitness and plaintiff stood in privity with regard to the same set of operative facts. Cases calling for the application of *res judicata* oftentimes are more convoluted than the instant one. Here, it is simple. Defendant enacted an ordinance affecting the Plaza in which plaintiff and Capital Fitness held mutual property rights. Capital Fitness sued defendant immediately to stop its implementation of the ordinance, while plaintiff did not. Instead, plaintiff chose to wait before subsequently doing the same thing, instead of joining with Capital Fitness when the challenge against defendant was first raised. While it is unfortunate for plaintiff that Capital Fitness lost its suit, to allow it to pursue its suit would essentially condemn defendant to relitigate issues already decided in all potential suits filed by anyone with a property interest in the Plaza. This is precisely what *res judicata* was meant to prevent.

## CONCLUSION

Accordingly, for all the foregoing reasons, we affirm the judgment of the trial court

24

granting summary judgment in favor of defendant and against plaintiff on all counts of plaintiff's complaint based on *res judicata*.

Affirmed.