# Illinois Official Reports

## Appellate Court

> ### *Indian Harbor Insurance Co. v. MMT Demolition, Inc.*, 2014 IL App (1st ) 131734

| | |
|---|---|
| Appellate Court Caption | INDIAN HARBOR INSURANCE COMPANY, as Subrogee of Podmajersky Management, Inc., Plaintiff-Appellant, v. MMT DEMOLITION, INC., Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1734 |
| Filed | June 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | *Res judicata* did not bar plaintiff insurer from pursuing its subrogation claim against defendant demolition company for the damages suffered by a building plaintiff insured as a result of defendant's alleged negligence in demolishing a neighboring building, notwithstanding the fact that judgment was entered for defendant in an earlier small claims action brought by tenants of the damaged building, since defendant failed to establish the identity of the two causes of action or that the tenants were in privity with plaintiff; therefore, the trial court's entry of summary judgment for defendant on the ground that *res judicata* barred plaintiff's action was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-007509; the Hon. Kathy Flanagan, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Russell M. Barnett, of Wheaton, for appellant. |
| | |
| | Robert R. Dlugajczyk, of Law Offices of Robert R. Dlugajczyk, of Chicago, for appellee. |

| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion. Justices McBride and Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Indian Harbor Insurance Company appeals an order granting summary judgment to defendant MMT Demolition, Inc., on the ground that plaintiff's subrogation lawsuit for negligence was precluded by *res judicata*. The lawsuit concerned property damage to a building managed by its insured, Podmajersky Management, Inc. (Podmajersky). Prior to the filing of plaintiff's subrogation suit for negligence against defendant, two tenants in the building filed a lawsuit against defendant in small claims court concerning their property damage, which they claimed was also caused by defendant. After a bench trial, the trial court found for defendant. Defendant argues in the instant case that the judgment had a preclusive effect against plaintiff in the case at bar. The trial court agreed and granted summary judgment in defendant's favor. For the following reasons, we reverse.

¶ 2                                BACKGROUND
¶ 3    Podmajersky is the property manager of the subject property, which consists of a two-story, mixed residential and commercial building located on South Halsted Street in Chicago. Plaintiff is the subrogee of Podmajersky. Defendant is an Illinois corporation engaged in the demolition business, with its principal place of business located in Chicago. Developing Environments, LP (Developing Environments), which is not a party to this case, is an Illinois limited partnership that owns a parcel of real property (the neighboring property) adjacent to the subject property.

¶ 4                              I. The Demolition
¶ 5    This appeal concerns a lawsuit for negligence arising from the demolition of the neighboring property. Plaintiff alleges the following facts in its complaint: On or about May 30, 2007, Developing Environments retained defendant to demolish the neighboring property and remove its debris. Defendant obtained the necessary permits from the City of Chicago to demolish the neighboring property and the demolition occurred on September 10, 2007.

¶ 6    The front wall of the neighboring property was attached, by interlocking running board, to the front wall of the subject property. In order to demolish the neighboring property, defendant

- 2 -

was required to "address the issue of the front walls of both buildings attached via interlocking running board." Plaintiff alleges that, despite the front walls being attached, defendant at no relevant time ever isolated the two buildings or cut the roof trusses of the neighboring property away from the walls of the subject property. Instead, defendant chose to "push and pull the entire roof framing in order to separate it from the [subject property], thus transferring the force to the front wall of the [subject property] and causing said wall to move outward by approximately five inches and become permanently bowed." Defendant's actions caused vertical cracks through the masonry walls of the structure of the subject property, rendered doors and windows inoperable, left the front wall of the subject property unable to resist any structural loads, compromised the structural integrity, and rendered the entire building uninhabitable.

## II. The Investigation

On September 11, 2007, Structure Evaluation Engineers, Inc. (SEE), was authorized by Podmajersky to conduct an evaluation of the subject property to review the "existing conditions and damages caused by [defendant] while demolishing the adjacent building." On September 20, 2007, SEE submitted a letter to Podmajersky detailing its findings. SEE opined that defendant did not implement proper demolition procedures and, as a result, damaged the front masonry wall of the subject property and compromised the structural integrity of the wall. On October 30, 2007, L.J. Shaw & Co. (Shaw), an independent insurance adjustor hired by defendant to investigate the property damage, sent a letter to defendant stating that its preliminary investigation of the subject property indicated that defendant was responsible for the damages and warned it to notify its insurer that it might be liable for damages. In the course of its investigation, Shaw retained a structural engineering firm (Engineering Systems, Inc. (ESI)). On November 14, 2007, ESI submitted a report of its investigation of the subject property to Shaw. The ESI report states, in summary, that the masonry on the front wall of the subject property was "tied to" the front wall of the neighboring property by interlocking running bond masonry, that defendant should have isolated the two buildings, and that the "cause of distress" to the subject property was from defendant's demolition operations.

Plaintiff alleges that it is the *bona fide* owner of the cause of action set forth in its complaint, by virtue of having made payments "to or on behalf of" Podmajersky, pursuant to its insurance policy.

## III. The Tenant Lawsuit

On February 19, 2008, two tenants in the subject property, John Bomher and Elizabeth Jochum (the tenants), filed a *pro se* lawsuit (the tenant lawsuit) in the small claims court of the municipal division of the circuit court of Cook County against defendant and Podmajersky. In their complaint, the tenants allege the following: that they leased a residence at the subject property and operated home occupation freelance businesses from their residence. As a result of the demolition defendant performed on September 10, 2007, the tenants' residence "suffered major damage to the exterior and interior." Podmajersky gave notice to the tenants to vacate the premises on October 9, 2007, as a result of the damage caused by defendant. The tenants submitted a claim for their damages, and both defendant and Podmajersky failed to honor the claim. The tenants alleged $9,912.38 in damages, plus costs.

¶ 12    On May 15, 2008, the trial court granted Podmajersky's motion to dismiss in the tenant lawsuit.[1] Podmajersky did not participate in any further proceedings in the tenant lawsuit. On October 16, 2008, the tenant lawsuit proceeded to a bench trial, and the trial court entered judgment in favor of defendant. The record does not contain a trial transcript of the trial proceedings or a bystander's report, nor is there a written order that explains the basis for the court's rulings.

¶ 13                                    IV. The Lawsuit at Issue

¶ 14    On June 29, 2010, plaintiff filed a subrogation lawsuit against defendant, alleging that defendant was negligent in its demolition of the neighboring property, causing $218,343.08 in damages.

¶ 15    In its answer, defendant asserts the affirmative defense of *res judicata*. Defendant argues that the lawsuit at issue in this appeal "involves the same cause of action as [did] the Tenant Lawsuit." Defendant argues that the tenants "shared mutual property rights in the [subject property]" with Podmajersky, plaintiff's subrogor, and are in privity with Podmajersky for *res judicata* purposes.

¶ 16    On December 19, 2012, defendant filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)), claiming that it was entitled to judgment under the doctrine of *res judicata*. Defendant claims that all three factors required for resolution under *res judicata* had been met because (1) the trial court's judgment in the tenant lawsuit was final; (2) there is an identity of interests in the tenant lawsuit and the lawsuit at bar because the tenants and plaintiff both filed negligence causes of action arising from defendant's demolition activities; and (3) there is an identity of parties because Podmajersky was a defendant in the tenant lawsuit and Podmajersky shared the same interests in the subject property as the tenants.

¶ 17    Plaintiff responded to defendant's motion, claiming that none of the requirements for *res judicata* had been met. First, plaintiff claims that defendant cannot support its claim that a final judgment on the merits had been issued in the tenant lawsuit because defendant did not include a transcript of the proceedings or a bystander's report before the trial court. Plaintiff claims that, other than unverified statements by defendant in its brief before this court, "there is nothing to show that the Court which ruled on the small claims action filed by two tenants of Podmajersky's building considered any of the evidence disclosed in the instant matter." Plaintiff next claims that it was not aware of the existence of the tenant lawsuit, claiming that Podmajersky never informed it of the proceedings. Furthermore, the damage estimation in the instant case had not yet been finalized when the tenant lawsuit proceeded to trial. Therefore, plaintiff could not have participated on the merits even if it were aware of the trial in the tenant lawsuit. Plaintiff also asserts that discovery is not permitted in small claims court, and defendant never claimed that any discovery occurred in the tenants' lawsuit. Plaintiff claims that there is "no indication" in the instant case that the two engineering reports were introduced into evidence in the tenant lawsuit, and it concludes that, because the reports were "not

[1]The record does not disclose the grounds on which Podmajersky sought to be dismissed, nor the grounds on which the trial court based its decision to dismiss Podmajersky.

available[2] to the tenants in their lawsuit," defendant cannot claim that the tenant lawsuit functioned as a final judgment on the merits in this case for purposes of *res judicata*.

¶ 18    Plaintiff argues that the claims were not identical because the tenants filed a cause of action for lost profits resulting from the interruption of the businesses operated out of the tenants' residence, whereas plaintiff's lawsuit sought damages for repairs to the subject property and lost rent. The tenants did not seek any damages related to damage to the subject property. Plaintiff's damages were not fully known until after the tenant lawsuit proceeded to trial, so the tenants could not have represented plaintiff's interests. In a footnote, plaintiff argues that, because there is no transcript or bystander's report, it is impossible to determine why the trial court entered judgment for defendant and that the judgment could have been based on the tenants' failure to prove that defendant owed them a duty, the tenants' failure to prove their damages, or the tenants' failure to prove defendant's breach of duty (negligence).

¶ 19    Plaintiff also argues that there was no identity of parties because the tenants do not share the same interests as plaintiff. Plaintiff argues that the tenants did not seek damages related to the damage to the subject property, the tenants did not share property rights with plaintiff's subrogor, and the tenants did not have access to the engineering reports.

¶ 20    On April 5, 2013, the trial court granted defendant's motion for summary judgment, finding that plaintiff's cause of action was barred by the doctrine of *res judicata*. Specifically, the trial court found that the decision in the tenant lawsuit was a final judgment on the merits. The trial court found that *res judicata* applies not only to matters that were decided, but matters that could have been decided in the original lawsuit. The trial court found that an identity of interests exists because the tenants and plaintiff sought recovery for damages resulting from defendant's negligence in demolishing the adjacent property. The trial court found that the difference in "amount or extent" of damages was inconsequential because they arose from the same operative facts. The trial court found an identity of parties, because (1) the tenants and plaintiff shared the same property interests, and (2) Podmajersky was a party to the tenant lawsuit, and it could have filed a cross-claim against defendant. The trial court found that Podmajersky was in possession of at least one engineering report at the time it was a party to the tenant lawsuit, and could have introduced it in evidence.

¶ 21    Plaintiff filed a timely notice of appeal, and this appeal followed.

¶ 22                                    ANALYSIS

¶ 23    Plaintiff raises four issues on appeal: (1) whether the trial court erred in granting defendant's motion for summary judgment; (2) whether a bench trial in small claims court brought by a tenant of the subject property constitutes a final judgment on the merits with respect to all issues involved in plaintiff's lawsuit; (3) whether a small claims lawsuit brought by a tenant of the subject property presented an identity of causes of action sufficient to invoke

---

[2]Defendant disputes the unavailability of at least the SEE report to the tenants. The SEE report was addressed to Podmajersky, and defendant asserts that Podmajersky's office manager testified on the tenants' behalf during trial. The SEE report was issued nearly one year before the trial in the tenant lawsuit. However, as plaintiff asserts, there is no transcript of the proceedings or bystander's report, and, thus, the only indications in the record that the Podmajersky office manager testified at trial are the statements made by defendant in its answer and motion for summary judgment.

the doctrine of *res judicata* and bar plaintiff's lawsuit; and (4) whether a small claims lawsuit brought by a tenant in the subject property presented an identity of parties sufficient to invoke the doctrine of *res judicata* and bar plaintiff's lawsuit. For the following reasons, we reverse the decision of the trial court and remand for further proceedings.

¶ 24                                    I. Standard of Review

¶ 25        Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). In determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Williams*, 228 Ill. 2d at 417.

¶ 26        Summary judgment is a drastic means of disposing of litigation and should therefore be allowed only when the right of the movant to a judgment in its favor is clear and free from doubt. *Williams*, 228 Ill. 2d at 417. The standard of review for appeals arising from summary judgment is *de novo*. *Williams*, 228 Ill. 2d at 417. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 27                                    II. *Res Judicata*

¶ 28        The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties, or their privies, on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). *Res judicata* extends not only to what was actually decided in the original action, but also to matters which could have been decided in the original action. *Rein*, 172 Ill. 2d at 334-35. "For the doctrine of *res judicata* to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of causes of action; and (3) there was an identity of parties or their privies." *Rein*, 172 Ill. 2d at 335 (citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994)). If any requirement is not met, *res judicata* will not apply. See *Goodman v. Hanson*, 408 Ill. App. 3d 285, 300 (2011) (finding that although the second and third requirements of *res judicata* were satisfied, "we cannot find that the first requirement is satisfied and thus the claim would not be barred by *res judicata*"). The burden of showing that *res judicata* applies is on the party invoking the doctrine. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41.

¶ 29                              A. Final Judgment on the Merits

¶ 30        The first requirement of *res judicata* is a final decision on the merits. "A final judgment is a determination of the issues presented which ascertains and fixes absolutely and finally the rights of the parties." *Gallaher v. Hasbrouk*, 2013 IL App (1st) 122969, ¶ 23. In *Gallaher*, we found that an administrative order from the Director of the Department of Public Health which concluded "only a preliminary, procedural matter *** and left open the substantive issue of whether [the plaintiff] should lose her teaching credentials" was *not* a final judgment on the merits for purposes of *res judicata*. *Gallaher*, 2013 IL App (1st) 122969, ¶ 23. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290 (1998), examined whether a dismissal could operate

as a final decision on the merits. In *River Park*, our Illinois Supreme Court found that "the dismissal of a complaint for failure to state a claim is an adjudication on the merits [citations], while the dismissal of a complaint for lack of subject matter jurisdiction is not considered a decision on the merits of that complaint." *River Park*, 184 Ill. 2d at 303. A judgment entered in a small claims court case may be a final judgment on the merits for the purposes of barring a cause of action in a subsequent non-small-claims case. *Kasny v. Coonen & Roth, Ltd.*, 395 Ill. App. 3d 870, 873 (2009) (the parties agreed that a judgment in a small claims lawsuit satisfied the final on the merits requirement of *res judicata*).

¶ 31        Plaintiff admits that a court of competent jurisdiction rendered a verdict in the tenant lawsuit and that the tenants' alleged damages arose from the same negligent demolition that gave rise to plaintiff's claimed damages. However, plaintiff argues that other factors present in this case undermine the fact that a court of competent jurisdiction rendered a final verdict. For example, plaintiff states that it was not a party to the tenant lawsuit and was unaware of the tenant lawsuit during its pendency. Plaintiff cites *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 221 (2011), to argue that a nonparty's knowledge of pending litigation is a factor to be considered when determining the applicability of *res judicata*. However, in *Agolf*, the parties agreed that the first two requirements of *res judicata*, including a final judgment on the merits, had been satisfied and the remainder of the analysis focused on whether an identity of parties existed. *Agolf*, 409 Ill. App. 3d at 219. Therefore, any consideration of knowledge would be relevant to the third requirement, and not the first. Since plaintiff does not argue that the trial court's verdict in the tenant lawsuit was not final and was not rendered by a court of competent jurisdiction, we cannot say that there was no final judgment on the merits in the tenant lawsuit. Points not argued in an appellant's brief are waived. *Halpin v. Schultz*, 234 Ill. 2d 381, 390 (2009) (citing Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006)).

¶ 32                                B. Identity of Causes of Action

¶ 33        The second requirement of *res judicata* is an identity of the causes of action. Our Illinois Supreme Court "has recognized the validity of the transactional test" to determine whether there is an identity of the causes of action. *River Park*, 184 Ill. 2d at 309-10. Under the transactional test, a court examines the causes of action in " 'factual terms,' " which are considered " 'coterminous with the transaction[,] regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff, *** and regardless of the variations in the evidence needed to support the theories or rights.' " *River Park*, 184 Ill. 2d at 309 (quoting Restatement (Second) of Judgments § 24 cmt. a (1982)). To determine whether there is an identity of the causes of action between the first and second lawsuit, courts must examine the facts that give rise to the plaintiff's right to relief, not simply the facts which support the judgment in the first action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 338-39 (1996). The factors relevant to ascertaining whether the two lawsuits are linked include their "relation in time, space, origin, and motivation, whether they form a convenient trial unit, and whether their treatment as a single unit conforms to the parties' expectations and business usage or understanding." *Cload v. West*, 328 Ill. App. 3d 946, 951 (2002). The test is to be applied pragmatically. *Cload*, 328 Ill. App. 3d at 951 (citing *River Park*, 184 Ill. 2d at 309, citing Restatement (Second) of Judgments § 24 (1982)). Courts

shall find identical causes of action even if there is not a substantial overlap of evidence needed to prove the causes of action, so long as the causes of action arise from the same transaction. *River Park*, 184 Ill. 2d at 311.

¶ 34     Defendant argues that Podmajersky was in a position to file a counterclaim[3] against defendant in the tenants' lawsuit, and, therefore, Podmajersky could have pursued the cause of action which plaintiff is now pursuing as Podmajersky's subrogee. In Illinois, counterclaims are generally permissive, rather than mandatory. *Kasny v. Coonen & Roth, Ltd.*, 395 Ill. App. 3d 870, 873 (2009). A defendant in a lawsuit may choose to pursue its claim against a plaintiff or codefendant by way of a counterclaim or by way of a separate lawsuit. *Kasny*, 395 Ill. App. 3d at 873. However, if the defendant's claim involves the same operative facts as the plaintiff's claim, *res judicata* may bar the defendant from raising its claim in a subsequent action. *Kasny*, 395 Ill. App. 3d at 873. Specifically, *res judicata* bars a subsequent action if successful prosecution of that action would in effect nullify the judgment entered in the initial action. *Kasny*, 395 Ill. App. 3d at 873. In addition, *res judicata* "extends only to claims that ' "could have been presented *by the exercise of due diligence*." ' " (Emphasis in original.) *Kasny*, 395 Ill. App. 3d at 874 (quoting *Hughey v. Industrial Comm'n*, 76 Ill. 2d 577, 582 (1979), quoting 46 Am. Jur. 2d *Judgments* § 417). If a claim exists and a litigant does not discover it despite the litigant's due diligence, *res judicata* does not apply. *Kasny*, 395 Ill. App. 3d at 874.

¶ 35     In *Kasny*, the plaintiff hired the defendant law firm to represent him in the dissolution of his marriage. *Kasny*, 395 Ill. App. 3d at 871. The plaintiff failed to pay the defendant for its services, and the defendant filed a lawsuit against the plaintiff in small claims court to recover its outstanding legal fees. *Kasny*, 395 Ill. App. 3d at 871. The plaintiff did not appear in the small claims matter, and the trial court entered a judgment in favor of the defendant. *Kasny*, 395 Ill. App. 3d at 871. Subsequently, the plaintiff filed the lawsuit at issue in *Kasny*, alleging that the defendant committed legal malpractice and breach of contract. *Kasny*, 395 Ill. App. 3d at 871. The defendant filed a motion to dismiss the case, arguing that the judgment in the small claims court barred the plaintiff's lawsuit. *Kasny*, 395 Ill. App. 3d at 872. On appeal, the parties agreed that there was a final judgment on the merits and that there was an identity of parties. *Kasny*, 395 Ill. App. 3d at 873. The defendant argued that the plaintiff could have discovered the legal malpractice cause of action had he participated in the small claims lawsuit and contested his liability. *Kasny*, 395 Ill. App. 3d at 875. However, the Second District found small claims litigation is intended to be *expedient*, and that it could "not necessarily attribute [the plaintiff's] default in the small claims case to a lack of diligence in exploring his defenses." *Kasny*, 395 Ill. App. 3d at 875. The Second District found that, even if the plaintiff had participated in the small claims litigation and "had any inkling of malpractice, he would

---

[3]Defendant uses the term "cross-claim" in its brief to refer to a cause of action by Podmajersky, as a defendant in the tenant lawsuit, filed against defendant, which was also named as a defendant in the tenant lawsuit. The Code of Civil Procedure defines the term "counterclaim" as follows: "[a]ny claim by one or more defendants against one or more plaintiffs, *or against one or more codefendants*, whether in the nature of setoff, recoupment, *cross claim* or otherwise, and whether in tort or contract, *** may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim." (Emphases added.) 735 ILCS 5/2-608 (West 2010). We shall therefore refer to a potential cause of action filed by Podmajersky, as a defendant in the tenant lawsuit, against defendant, its codefendant in the tenant lawsuit, as a counterclaim.

not necessarily have been unreasonable for failing to rely on the prospect of small claims discovery, which he could not conduct as a matter of right, to flesh it out." *Kasny*, 395 Ill. App. 3d at 875. See Ill. S. Ct. R. 287(a) (eff. Aug. 1, 1992) ("No depositions shall be taken or interrogatories or other discovery proceeding or requests to admit be used prior to trial in small claims except by leave of court."). "While a small claims defendant cannot use the expediency of the proceeding as a shield if he has truly failed to be diligent, the small claims plaintiff cannot use it as a sword if the defendant, despite his diligence, is unable to marshal a counterclaim in time." *Kasny*, 395 Ill. App. 3d at 875-76. The Second District concluded that a question of fact existed because the plaintiff argued that he had been diligent in pursuing his legal malpractice cause of action and the defendant argued the opposite. *Kasny*, 395 Ill. App. 3d at 876. As a result, the Second District determined that dismissal was improper. *Kasny*, 395 Ill. App. 3d at 876.

¶ 36      As with a dismissal, summary judgment is not appropriate if a question of material fact exists. *Williams*, 228 Ill. 2d at 417. Although plaintiff does not argue that it was unaware of its negligence claim at the time of the tenants lawsuit, plaintiff does argue that the damages in the negligence cause of action were not yet finalized, and, thus, it could not have participated in a trial on the merits. The record does not include any discovery from the tenant lawsuit, nor does it include any orders giving leave to conduct discovery. The record also does not include a report of proceedings or a bystander's report from the trial. As a result, we have no way of knowing whether or not the trial court gave the parties leave to conduct discovery. Therefore, although plaintiff certainly had an "inkling" of a negligence cause of action, we cannot say that it was not unreasonable for Podmajersky not to pursue the cause of action in small claims court, because Podmajersky or plaintiff, as Podmajersky's subrogee, may not have been able to flesh out its cause of action through adequate discovery. *Kasny*, 395 Ill. App. 3d at 875. If plaintiff could not have pursued its cause of action in the tenant lawsuit and defendant argues that plaintiff could have, there is a question of fact that should have precluded summary judgment. *Williams*, 228 Ill. 2d at 417; *Kasny*, 395 Ill. App. 3d at 876.

¶ 37      Defendant argues that plaintiff had sufficient information during the pendency of the tenant lawsuit to be able to adequately pursue a counterclaim against defendant. Defendant points to a settlement agreement entered into between plaintiff and Podmajersky to settle a lawsuit concerning a "controversy" concerning the amount plaintiff owed to Podmajersky under the insurance policy. The settlement agreement, dated April 23, 2010, states that plaintiff paid Podmajersky for the "actual cash value of the [subject property] repairs in the amount of $130,843.08," and that, after Podmajersky filed the lawsuit against plaintiff in 2009, they agreed that plaintiff would pay an additional $82,500. Defendant argues that although the settlement agreement does not disclose when the initial payment of $130,843.08 was made, "it is reasonable to assume that payment would have occurred shortly after the engineers reported the nature and extent of the structural damage to [Shaw] in 2007, and certainly well before final judgment was entered in the Tenant Lawsuit in October 2008."

¶ 38      We do not find this argument persuasive. Defendant provides no explanation as to why "it is reasonable to assume" when payment occurred. Neither engineering report provides even an estimate of the cost of repair, nor does the Shaw letter. Furthermore, Podmajersky filed the lawsuit against plaintiff after the trial court entered judgment in the tenant lawsuit, indicating that the damage amount had not been settled at the time the tenant lawsuit concluded. Even if plaintiff and Podmajersky knew the cost of the repairs to the subject property during the

pendency of the tenant lawsuit, we cannot say that Podmajersky was unreasonable in not pursuing the cause of action in small claims court when over $80,000 in damages had yet to be finalized.

¶ 39     Finally, defendant has the burden of proving that *res judicata* applies. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41. This burden includes the "duty to clarify the record so as to *clearly* demonstrate [its] entitlement to the doctrine's application." (Emphasis in original.) *Hernandez*, 2012 IL 113054, ¶ 52. Defendant has not obtained a report of proceedings or a bystander's report from the tenant lawsuit and, thus, the record is far from clear as to what occurred in the tenant lawsuit. We do not know whether the trial court would have allowed discovery or under what circumstances the trial court entered judgment in defendant's favor. The trial court may have found that defendant caused the damage but that defendant did not owe a duty to the tenants, or that the tenants did not prove their damages, which are very different from the damages claimed by plaintiff. Therefore, we cannot find that defendants have carried their burden in proving that the causes of action were identical.

¶ 40                    C. Identity of Parties or Their Privies

¶ 41     The third requirement of *res judicata* is an identity of parties, or their privies. For purposes of *res judicata*, "[p]rivity is said to exist between ' "parties who adequately represent the same legal interests." ' " *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992) (quoting *Hartke v. Chicago Board of Election Commissioners*, 651 F. Supp. 86, 90 (N.D. Ill. 1986), quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir. 1985)). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties [citation]." *Burris*, 151 Ill. 2d at 296.

¶ 42     Plaintiff alleges that it is the *bona fide* owner of the cause of action set forth in its complaint, by virtue of having made payments "to or on behalf of" Podmajersky, pursuant to its insurance policy. Defendant does not dispute this point. Plaintiff, as Podmajersky's subrogee, has "stepped into Podmajersky's shoes" and has no greater rights than Podmajersky. *Reich v. Tharp*, 167 Ill. App. 3d 496, 501 (1987). As a result, plaintiff cannot claim that its lack of knowledge of the tenants' lawsuit shields it from *res judicata*, because doing so would afford plaintiff greater rights than Podmajersky.

¶ 43     Defendant argues that the relevant issue is whether the tenants are in privity with Podmajersky because, if they are, plaintiff, as Podmajersky's subrogee, would also be in privity with the tenants. Defendant relies on *Agolf*, 409 Ill. App. 3d 211, to argue that the tenants are in privity with Podmajersky. In *Agolf*, the plaintiff purchased a shopping center and it negotiated leases to various entities for space within the shopping center, including a lease to a third party entity that operated a health club out of the leased space. *Agolf*, 409 Ill. App. 3d at 212. The third party's lease commenced in 1997 and included options to renew until August 2016. *Agolf*, 409 Ill. App. 3d at 212. In 2002, the defendant, a municipal corporation, announced that it would be implementing a tax increment financing (TIF) district as part of a redevelopment project. *Agolf*, 409 Ill. App. 3d at 212. This plan targeted specific property in Arlington Heights, which included the property on which the shopping center sat. *Agolf*, 409 Ill. App. 3d at 212. The defendant designated and implemented the TIF district via ordinance. *Agolf*, 409 Ill. App. 3d at 212.

¶ 44    In 2002, the third party filed a lawsuit against the defendant seeking an injunction and declaratory judgment prohibiting the defendant from condemning the shopping center property pursuant to the Tax Increment Allocation Redevelopment Act (65 ILCS 5/11-74.4-1 *et seq.* (West 2002)), a declaration that the designation of the redevelopment area was invalid, a declaration that the shopping center should not be included in the redevelopment project, and damages. *Agolf*, 409 Ill. App. 3d at 212-13. The third party filed two amended complaints, additionally alleging that the redevelopment area did not meet the requirements of a TIF plan, that the defendant failed to demonstrate that the project area was not subject to growth, and that the defendant's plan was improper. *Agolf*, 409 Ill. App. 3d at 213. The lawsuit proceeded to trial in 2006, and the trial court determined that the third party failed to meet its burden and that the TIF ordinance was proper. *Agolf*, 409 Ill. App. 3d at 213. The third party appealed, and this court affirmed. *Agolf*, 409 Ill. App. 3d at 214. The third party then petitioned our Illinois Supreme Court for review of the lawsuit, but the supreme court denied the request for leave to appeal. *Agolf*, 409 Ill. App. 3d at 214.

¶ 45    In 2006, while the third party's lawsuit was pending, the plaintiff filed a lawsuit, seeking an injunction against the defendant to prevent it from implementing the TIF district and a declaratory judgment that the defendant's plan violated the Tax Increment Allocation Redevelopment Act (65 ILCS 5/11-74.4-1 *et seq.* (West 2002)). *Agolf*, 409 Ill. App. 3d at 215. The trial court stayed the plaintiff's litigation as a result of the pendency of the third party's lawsuit against the defendant. *Agolf*, 409 Ill. App. 3d at 215. Following the resolution of the third party's lawsuit, which found that the TIF district was valid, the defendant filed a motion for summary judgment on the ground of *res judicata*, and the trial court granted the motion. *Agolf*, 409 Ill. App. 3d at 215.

¶ 46    On appeal, the plaintiff conceded that the first two elements of *res judicata* had been met, but argued that there was no identity of parties because it was the third party's landlord, and, therefore, the third party's interests in the TIF litigation was not the same as the plaintiff's interests. *Agolf*, 409 Ill. App. 3d at 219-20. This court found that privity existed between the landlord plaintiff and the tenant third party. *Agolf*, 409 Ill. App. 3d at 220-21. Both the plaintiff and the third party sought the same relief in their lawsuits against the defendant–injunctive relief and a declaratory judgment preventing the defendant from incorporating the shopping center in its redevelopment plan. *Agolf*, 409 Ill. App. 3d at 221. We next found that the third party adequately represented the plaintiff's interest because the third party filed its lawsuit "immediately after [the] defendant enacted the ordinance establishing the TIF district in July 2002," and because the third party pursued the litigation to a trial, at which 14 witnesses testified, to an appeal before this court, and, finally, to our Illinois Supreme Court, "thereby exhausting its judicial options–all in an effort to save [the] plaintiff's [shopping center]." *Agolf*, 409 Ill. App. 3d at 221. Furthermore, the plaintiff "undoubtedly" knew about the third party's lawsuit from its inception and "knew the contents of its legal assertions against [the] defendant." *Agolf*, 409 Ill. App. 3d at 221. The plaintiff's president and manager testified at the third party's trial against the defendant. *Agolf*, 409 Ill. App. 3d at 221. Her testimony included a statement that the plaintiff's lawsuit, "just as [the third party's] suit against [the] defendant, sought to declare the TIF district invalid." *Agolf*, 409 Ill. App. 3d at 221. We therefore found that the plaintiff and the third party shared the same legal interest regarding the shopping center "and its fate under [the] defendant's TIF redevelopment project," and that the third party

- 11 -

"adequately represented that shared interest in its suit against [the] defendant." *Agolf*, 409 Ill. App. 3d at 221.

¶ 47    We find that *Agolf* is factually distinguishable from the case at bar. In *Agolf*, we found that the tenant third party was in privity with the landlord plaintiff because both parties filed a lawsuit against the defendant seeking the exact same relief, injunctive relief and a declaratory judgment preventing the defendant from incorporating the shopping center in its redevelopment plan, concerning the exact same property, the shopping center. *Agolf*, 409 Ill. App. 3d at 220-21. The third party pursued its litigation over the course of seven years, all the way to a petition for leave to appeal before the Illinois Supreme Court. *Agolf*, 409 Ill. App. 3d at 221. These facts are not present in the case at bar. Although both the tenants' lawsuit and plaintiff's lawsuit concern damage to the subject property, the parties sought very different relief. The tenants filed a *pro se* complaint in a small claims court to recover $9,912.38 resulting from their "losses and damages." Parties do not engage in discovery proceedings in small claims cases unless the trial court gives leave to do so. Ill. S. Ct. R. 287(a) (eff. Aug. 1, 1992). The tenants named Podmajersky, plaintiff's subrogor, as a defendant in their *pro se* lawsuit, indicating that the tenants believed that Podmajersky was liable to them. Conversely, plaintiff, as subrogee of Podmajersky, filed its lawsuit in the law division of the circuit court of Cook County to recover $218,343.08, resulting from damage to the subject property and lost rent. Plaintiff was represented by counsel and engaged in discovery proceedings. Unlike in *Agolf*, the parties engaged in very different types of actions and sought different relief. In fact, the tenants initially sought relief *from* Podmajersky, thus indicating that the tenants were *not* representing Podmajersky's interests. See *Burris*, 151 Ill. 2d at 296 ("[i]t is the identity of interest that controls in determining privity, not the nominal identity of the parties").

¶ 48    Our case law indicates that defendant gives too broad a definition to privity when it argues that the tenants are in privity with Podmajersky as a result of the landlord-tenant relationship. In *Mount Mansfield Insurance Group, Inc. v. American International Group, Inc.*, 372 Ill. App. 3d 388 (2007), this court examined the identity of parties requirement of *res judicata*. In *Mount Mansfield*, the plaintiff was a wholly owned subsidiary of a holding company, and it was established "to create a captive insurance company for workers' compensation claims." *Mount Mansfield*, 372 Ill. App. 3d at 389. The defendant was responsible for issuing insurance policies to the holding company's shareholder companies and providing them with claims handling services. *Mount Mansfield*, 372 Ill. App. 3d at 389. As the " 'captive insurer,' " the plaintiff provided reinsurance to the defendant to reimburse it for losses. *Mount Mansfield*, 372 Ill. App. 3d at 390. In 1997, the holding company and its shareholders filed a lawsuit against the defendant, alleging that the defendant's wrongful conduct "caused an increase in their insurance premiums, a need to reimburse [the plaintiff] for its losses, and an increase in the cost of future workers' compensation insurance." *Mount Mansfield*, 372 Ill. App. 3d at 390. The plaintiff was not a party to this lawsuit because it was in rehabilitation and its board of directors was allegedly enjoined from transacting business, including authorizing lawsuits filed in its name. *Mount Mansfield*, 372 Ill. App. 3d at 390. In 2005, after the holding company's lawsuit had been dismissed, the plaintiff filed a lawsuit against the defendant, alleging that the defendant improperly handled workers' compensation claims, inflated the value assigned to its reserve requirements, and forced it to defend itself in an unnecessary rehabilitation. *Mount Mansfield*, 372 Ill. App. 3d at 391. The defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure, arguing that the plaintiff's

lawsuit was barred by *res judicata*, and the trial court dismissed the lawsuit with prejudice. *Mount Mansfield*, 372 Ill. App. 3d at 392.

¶ 49    On appeal, the plaintiff argued that it was not in privity with the holding company during the holding company's lawsuit against the defendant. *Mount Mansfield*, 372 Ill. App. 3d at 393. The defendant argued that the plaintiff was in privity with the holding company as a result of the fact that the plaintiff was a wholly owned subsidiary of the holding company. *Mount Mansfield*, 372 Ill. App. 3d at 393. We found that "[t]his argument oversimplifies and 'glosses over' the layers of corporate structure here." *Mount Mansfield*, 372 Ill. App. 3d at 393. For example, "a shareholder of a corporation has no personal or individual right to pursue an action against third parties for damages resulting indirectly to the shareholder because of an injury to the corporation." *Mount Mansfield*, 372 Ill. App. 3d at 393. Shareholders may file a derivative action on behalf of the corporation, but they must allege and prove an equitable basis for such intervention. *Mount Mansfield*, 372 Ill. App. 3d at 393. Therefore, in *Mount Mansfield*, we found that the holding company, as the plaintiff's sole shareholder, "had no right to represent the interests of its subsidiary unless it was able to pursue a derivative action on its behalf." *Mount Mansfield*, 372 Ill. App. 3d at 393. We found that the holding company "pursued individual rather than derivative rights" and therefore did not adequately represent the interests of the plaintiff in the original lawsuit. *Mount Mansfield*, 372 Ill. App. 3d at 394.

¶ 50    Although the holding company and the plaintiff had a corporate relationship and both lawsuits arose from the defendant's handling of workers' compensation claims, we found that *res judicata* did not apply because the parties were not in privity with one another. *Mount Mansfield*, 372 Ill. App. 3d at 395. We find *Mount Mansfield*'s analysis of privity relevant to determining the relationship of the parties in the case at bar. Both the tenants' lawsuit and plaintiff's lawsuit arise from the damage caused to the subject property by defendant. Although the tenants have a legal relationship with Podmajersky, that of landlord-tenant, to state that such relationship is enough to establish privity oversimplifies the relationship. Like in *Mount Mansfield*, the rights pursued by the tenants in their lawsuit were distinct and different from the rights that plaintiff is pursuing in its cause of action.

¶ 51    This court's decision in *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, is also instructive. In *Oshana*, an ironworker filed a negligence lawsuit against a general contractor and a subcontractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 4. The ironworker was employed by an ironworking company that had been subcontracted by another subcontractor to perform steel erection for a construction project. *Oshana*, 2013 IL App (1st) 120851, ¶ 4. The general contractor filed a third-party complaint for contribution against the ironworker's employer and a counterclaim for contribution against the subcontractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 4. The general contractor's contract with the subcontractor included a requirement that the subcontractor obtain a certain amount of general liability insurance, which would cover the subcontractor, the subcontractor's employees, and the general contractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 5. Any subcontractors hired by the subcontractor were also required to maintain the same level of insurance and include the general contractor in the policy as an additional insured. *Oshana*, 2013 IL App (1st) 120851, ¶ 5. The general contractor requested that the insurer who provided general liability insurance to the iron worker's employer provide it with a defense and indemnification in the negligence lawsuit. *Oshana*, 2013 IL App (1st) 120851, ¶ 5. The insurer declined, stating that the general contractor was not covered by the employer's policy. *Oshana*, 2013 IL App (1st) 120851, ¶ 5. The insurer filed a declaratory

- 13 -

judgment action, requesting a judgment that it was not required to defend and indemnify the general contractor in the negligence lawsuit. *Oshana*, 2013 IL App (1st) 120851, ¶ 6. The subcontractor was not a party to the declaratory judgment action. *Oshana*, 2013 IL App (1st) 120851, ¶ 6. The trial court found that the general contractor was not insured under the employer's policy and granted summary judgment to the employer. *Oshana*, 2013 IL App (1st) 120851, ¶ 6. In the negligence lawsuit, the subcontractor filed a motion for summary judgment, arguing that it did not owe a duty to the ironworker. *Oshana*, 2013 IL App (1st) 120851, ¶ 7. The trial court granted the subcontractor's motion. *Oshana*, 2013 IL App (1st) 120851, ¶ 7. Subsequently, in the negligence lawsuit, the general contractor amended its complaint against the subcontractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 9. The general contractor alleged that the subcontractor failed to require that the employer obtain insurance covering the general contractor, as required by the contract between the general contractor and the subcontractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 9. The subcontractor filed a motion to dismiss the amended complaint on the ground of *res judicata*, alleging that both the declaratory judgment action by the insurer and the summary judgment in the subcontractor's favor barred recovery for the general contractor's breach of contract cause of action. *Oshana*, 2013 IL App (1st) 120851, ¶ 10. The trial court granted the motion to dismiss, but did not specify which judgment, the declaratory judgment in favor of the insurer or the summary judgment in favor of the subcontractor, it based its ruling on. *Oshana*, 2013 IL App (1st) 120851, ¶ 11.

¶ 52    On appeal, the subcontractor argued that, even though it was not a party to the declaratory judgment action, it was in privity with the insurer for that cause of action because the subcontractor was an additional insured on the policy between the insurer and the employer, and because the insurer had provided a defense and indemnity to the subcontractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 22. The subcontractor further argued that the insurer represented its interests in the declaratory judgment action, and that it benefited from the general contractor not being an insured under the policy, because the subcontractor no longer had to share the policy limits with the general contractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 22. We found that although the subcontractor was in privity with the insurer in the negligence lawsuit, as a result of the insurer-insured relationship, the subcontractor was not in privity with the insurer in the declaratory judgment action because the insurer did not represent its interests. *Oshana*, 2013 IL App (1st) 120851, ¶ 26. The insurer had an interest in the declaratory judgment action to defeat the general contractor's claim for defense and indemnification under the employer's policy, and we found that this interest was in conflict with the subcontractor's interest, because the subcontractor was allegedly contractually obligated to require the employer to provide insurance coverage to the general contractor. *Oshana*, 2013 IL App (1st) 120851, ¶ 26. The insurer "did not *** undertake to show that [the subcontractor], as [the insurer's] additional insured, was not liable for any failure to procure insurance coverage for [the general contractor]." *Oshana*, 2013 IL App (1st) 120851, ¶ 26.

¶ 53    The lack of aligned interests is even more stark in the case at bar. Defendant argues that plaintiff is in privity with the tenants because (1) plaintiff is in privity with Podmajersky because of his subrogation argument, and (2) Podmajersky is in privity with the tenants as a result of its landlord-tenant relationship. However, in the tenant lawsuit, the tenants named Podmajersky as a defendant. Even though the trial court dismissed Podmajersky from the tenant lawsuit prior to it proceeding to trial, we cannot find that tenants could represent the

interest of a party they believed was liable to them for damages. Therefore, the tenants could not adequately have represented plaintiff's rights in the lawsuit, and the tenants could not be in privity with plaintiff. See *Burris*, 151 Ill. 2d at 296 (identity of interests controls when determining privity).

¶ 54                                    CONCLUSION

¶ 55        Plaintiff could not have adequately pursued its cause of action during the pendency of the tenant lawsuit in a small claims court, and plaintiff was not in privity with the tenants. Since defendants cannot meet the second and third requirements of *res judicata*, plaintiff's lawsuit must be allowed to proceed.

¶ 56        Reversed and remanded.